Kenneth H. Brown (CA Bar No. 100396)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, CA 94105-1020
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: kbrown@pszjlaw.com
mmanning@pszjlaw.com

Counsel for E. Lynn Schoenmann,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PETER R. FADER<br>*dba* Urchin Capital Partners<br>*dba* Urchin Partners LLC,<br><br>Debtor. | Case No.: 08-30119-DM<br><br>Chapter 7<br><br>**TRUSTEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPROVE COMPROMISE OF ADVERSARY PROCEEDING AGAINST STEVEN R. BOAL AND QUOTIENT TECHNOLOGY PURSUANT TO FRBP 9019**<br><br>Hearing Date<br>Date: November 15, 2022<br>Time: 11:30 a.m.<br>Place: Telephonically or by Video<br>Judge: Honorable Dennis Montali |

**TABLE OF CONTENTS**

| | Page(s) |
|---|---|
| I. STATEMENT OF ISSUES TO BE DECIDED | 1 |
| II. FACTS | 1 |
|    A. The Debtor's Bankruptcy Filing | 1 |
|    B. Employment of Contingency Fee Litigation Counsel | 1 |
|    C. Litigation Sharing Agreement | 2 |
|    D. Proofs of Claim Filed in the Debtor's Bankruptcy Case | 2 |
|    E. The Claims against Boal | 2 |
|       a. Judicial Estoppel | 3 |
|       b. Statute of Limitations | 4 |
|       c. Enforceability of the Agreements | 5 |
|    F. The Proposed Settlement | 5 |
| III. ARGUMENT | 6 |
|    A. The Standard for Approval of Settlements Under Bankruptcy Rule 9019 | 6 |
|       1. Probability of Success: There Is A Material Risk Of No Recovery If The Case Is Tried To A Jury. | 7 |
|       2. Collection Difficulties are not a Factor. | 9 |
|       3. Complexity of Litigation. | 9 |
|       4. The Settlement is in the Best Interests of Creditors. | 9 |
| IV. CONCLUSION | 10 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................................................. 8

*City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*,
  656 F.3d 82 (1st Cir. 2011) ....................................................................................................... 7

*In re A & C Properties*,
  784 F.2d 1377 (9th Cir. 1986) .................................................................................................. 1

*In re Pac. Gas & Elec. Co.*,
  304 B.R. 395 (Bankr. N.D. Cal. 2004) ...................................................................................... 6

*In re Rake*,
  363 B.R. 146 (Bankr. D. Idaho 2007) ........................................................................................ 7

*In the Matter of Walsh Const., Inc.*,
  669 F.2d 1325 (9th Cir. 1982) ................................................................................................... 7

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
  2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) .......................................................................... 9

*Marin v. Kane (In re A&C Properties)*,
  784 F.2d 1377 (9th Cir. 1986) ................................................................................................... 6

*Third Story Music, Inc. v. Waits*,
  41 Cal. App. 4th 798 (1995) ...................................................................................................... 9

*Walker v. City of San Clemente*,
  239 Cal.App.4th 1350 (2015) .................................................................................................... 8

*Woodson v. Fireman's Fund Insur. Co. (In re Woodson)*,
  839 F.2d 610 (9th Cir. 1988) ..................................................................................................... 6

**Statutes**

11 U.S.C. §507(a)(1)(A) and (B) .................................................................................................... 2

**Other Authorities**

Cal. Civ Proc. Code section 339 ..................................................................................................... 4
Cal. Civ. Code § 1657 ..................................................................................................................... 9

**Rules**

Fed. R. Bankr. P. 9019 .................................................................................................................... 6

E. Lynn Schoenmann, the chapter 7 trustee (the "Trustee") of the estate of Peter R. Fader (the "Debtor"), submits this Memorandum of Points and Authorities in support of the *Motion to Approve Compromise of Adversary Proceeding against Steven R. Boal and Quotient Technology Inc. Pursuant to FRBP 9019* filed concurrently herewith.

I.

**STATEMENT OF ISSUES TO BE DECIDED**

The issue to be decided in the Motion is whether the Trustee's proposed settlement with Steven R. Boal and Quotient Technology, Inc., resolving the claims raised in adversary proceeding (No. 20-03007), satisfies the factors set forth by the Ninth Circuit in *In re A & C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1986) and should therefore be approved pursuant to Rule 9019 of Federal Rules of Bankruptcy Procedure.

II.

**FACTS**

A.  **The Debtor's Bankruptcy Filing**

On January 26, 2008, the Debtor filed a voluntary chapter 7 petition in this Court. The Debtor received a discharge and the case was subsequently closed in 2010.

On July 14, 2019, the Debtor filed an application to reopen his bankruptcy case to disclose claims based on oral agreement previously omitted from his bankruptcy schedules ("Claims") and to enable the Trustee to determine whether the Claims constitute property of the estate that can be administered by the Trustee.

On September 13, 2019, the United States Trustee appointed E. Lynn Schoenmann as the Chapter 7 trustee of the Debtor's case. On September 15, 2019 the Debtor's bankruptcy case was reopened to enable the Trustee to investigate and possibly pursue the Claims for the benefit of the estate and its creditors.

B.  **Employment of Contingency Fee Litigation Counsel**

On November 5, 2019, the Trustee applied for an order pursuant to sections 327(a) and 328 of title 11 of the Bankruptcy Code[1] authorizing the employment of Meade Firm P.C. and Dontzin

---
[1] Unless otherwise specified, statutory references are to the Bankruptcy Code.

1

Nagy & Fleissig LLP as litigation counsel to prosecute the Claims on a contingency fee basis. The Bankruptcy Court approved the application on November 13, 2019.

C. **Litigation Sharing Agreement**

The Debtor contended that he had rights to the Claims because he alleged that they arose, in part, post-petition. To resolve the dispute over the ownership of the Claims, the Debtor and the Trustee entered into a Litigation Recovery Sharing Agreement (the "Sharing Agreement") which provides the Debtor with 40% of the net proceeds recovered from the Trustee's prosecution of the Claims and 60% to the estate, after payment of all allowed chapter 7 administrative expenses and allowed domestic support obligations identified in 11 U.S.C. §507(a)(1)(A) and (B). On February 6, 2020, the Bankruptcy Court approved the Sharing Agreement.

D. **Proofs of Claim Filed in the Debtor's Bankruptcy Case**

There are 25 unsecured claims filed in the Debtor's bankruptcy case in the approximate and aggregate amount of $5.2M.[2] Of that amount, approximately $309,000 represent pre-petition domestic support obligations under 11 U.S.C. Section 507(a). Pursuant to the Sharing Agreement, allowed domestic support obligation claims will be paid with the proceeds of the proposed settlement of the adversary proceeding (described below), prior to the 40% split with the Debtor.

E. **The Claims against Boal**

The Trustee's investigation of the Claims revealed that the estate had colorable claims against the Debtor's friend and business associate, Steven R. Boal ("Boal") and his company Quotient Technology, Inc. ("Quotient") arising out of breaches of the oral agreements. The investigation revealed evidence that prior to 2008, Boal promised to compensate the Debtor if he raised capital for Boal's two companies, Quotient and CashStar, Inc. ("CashStar"). Under the terms of the Quotient agreement, the existence of which Boal disputes, the Debtor contends that Boal agreed that 30% of all stock that was issued by Quotient to Boal was for the benefit of the Debtor and that when Boal sold the stock that 30% of the proceeds would be paid to the Debtor. The

---

[2] This amount does not include Claims Nos. 22 and 24 filed by Stephen R. Boal in the total amount of $1.4 million, which claims were withdrawn by stipulation with the Trustee dated December 10, 2020 [Dkt. No 88].

2

arrangement with CashStar was similar except that the Debtor alleges he was promised a 50% interest in the stock that was issued to Boal.

The Debtor attested that based on these oral agreements, he raised millions of dollars in capital for Quotient and CashStar but when he requested Boal to pay the promised compensation in 2018 — after repeated agreements to extend the time for payment — Boal refused.

The Trustee filed a complaint December 9, 2019 in the Santa Clara County Superior Court against Boal and Quotient alleging claims for breach of oral contracts, breach of fiduciary duties, and for imposition of a constructive trust, declaratory relief, and an accounting. Boal removed the complaint to the Northern District Court. The matter was referred to the Bankruptcy Court where it is currently pending as Adversary Proceeding No. 20-03007.

The parties have engaged in extensive written discovery and depositions of the Debtor, Boal, and seven other percipient witnesses and motion practice.[3] Boal has stated his intention to file a motion for summary judgment on multiple grounds after the close of fact discovery. Throughout the proceeding, Boal has disputed liability to the Trustee and contends that he never entered into oral agreements with the Debtor and that no further sums are due to the Debtor. Boal also raises the following defenses:

        a.      <u>Judicial Estoppel</u>

Boal contends that the Trustee is judicially estopped from asserting claims arising out of the oral agreements because they were not disclosed on his bankruptcy schedules when he filed his chapter 7 petition in 2008. The Bankruptcy Court rejected the Boal's judicial estoppel defense during the January 31, 2020 hearing on the Trustee's motion to approve the Sharing Agreement and in its memorandum decision denying Boal's motion to dismiss. *See*, *Memorandum Decision Regarding Motions to Dismiss*, dated October 30, 2020 ("<u>Decision</u>") at pp. 6-7.

While the Bankruptcy Court has rejected the judicial estoppel defense, Boal has repeatedly signaled that he has not abandoned it, and it is likely that he will continue to raise it in the District Court after the reference is withdrawn for trial and on appeal.

---

[3] The other deponents are Paul Bodor, Cynthia Dietzmann, Julie Down, Patrick Gilligan, Thomas Saidy, Adam Tracy, and Myron Wick.

3

The District Court signaled its initial negative view of this case in June 2020. During a June 11, 2020 hearing on a motion by Boal to withdraw the reference, the Hon. Vince Chhabria of the United States District Court observed:

> You have made -- you have referenced arguments about the -- the oral contract from 20 years ago and the propriety of this arrangement between the Trustee and Fader.
>
> I have a gut reaction about that. My gut reaction about that, for what it is worth, is that it causes me to raise my eyebrows; right. It seems -- the whole thing seems rather suspect to me for this -- for this person to be coming back and asserting an oral contract from 20 years ago and then entering into this arrangement with the Trustee.

June 11, 2020 District Court Transcript Case No. 20-CV-1610 at 18:11-19.

b. <u>Statute of Limitations</u>

According to Boal, the Claims against him relating to Quotient in arose, at the latest in 2014 when Quotient went public and Boal sold some of his shares. As a result, Boal contends that the Claims became time-barred in 2016 under the applicable two year statute of limitations of Cal. Civ Proc. Code section 339(1) (although Boal also acknowledged that he continued to sell Quotient shares through 2016). Decision at p. 7. Boal also contends that the Claims relating to CashStar accrued in 2017. *Id.*

Although the Bankruptcy Court rejected the statute of limitations defense in denying Boal's motion to dismiss (Decision at pp. 7-9), the defense is expected to be raised at trial. The Trustee's ability to overcome this defense is uncertain and depends on the Debtor's testimony and his credibility. The Debtor has represented that he extended Boal's time for performance in response to pleas by Boal for more time to pay, or alternatively that Boal induced the Debtor not to sue with promises to pay later and therefore Boal is equitably estopped from asserting the Claims are time barred. The Trustee therefore contends that the continuous accrual doctrine applies in this case and the Claims are therefore not time barred.

Boal is expected to attack the Debtor's veracity and argue that the Debtor's deposition testimony supports the statute of limitations defense because the Debtor testified that Boal never asked him not to sue and that the Debtor believed Boal had violated the agreements between 2011 and 2018. *See,* Meade Decl. para 12.

4

c. <u>Enforceability of the Agreements</u>

Boal contends the alleged oral agreements are not sufficiently definite to be enforceable because they neither specify how much capital the Debtor was required to raise, nor the time for performance. The Trustee contends even if this is true, California law allows a party to supply the missing contractual terms to prevent the contract from failing. The Bankruptcy Court has observed that the Claims are vulnerable if the details of the agreements are not proved:

> Nonetheless, Trustee will have to address the following material questions at some point to avoid possible summary judgment: When and where was the agreement between Debtor and Boal reached? What were the specific terms? Was there a minimum amount of capital that had to be raised? Was there a time frame for performance?

(Decision, at pg. 10).

In 2020, Quotient was dismissed because the Bankruptcy Court determined the complaint did not adequately allege contractual agreements with Quotient. (Id.).

F. **The Proposed Settlement**

On August 24, 2022, the Trustee, Boal and Quotient participated in a full day mediation with the Hon. Rebecca Westerfield (Ret.) at JAMS, San Francisco who served as the mediator. The settlement negotiations continued in good faith for approximately one week after the mediation session at which time a settlement, subject to Bankruptcy Court approval, was reached. The agreement was memorialized in a *Settlement Agreement and Release* ("<u>Settlement Agreement</u>"), a copy of which is attached to the Trustee's declaration as <u>Exhibit A</u>. The essential terms of the Settlement Agreement are summarized as follows: (i) Boal and/or Quotient shall pay the estate the sum of $5,000,000 (the "<u>Settlement Amount</u>") payable in two equal installments of $2,500,000 with the first installment payment due on the earlier of December 15, 2022 or within 15 days of a final order approving the Settlement Agreement and the second installment due 90 days thereafter ; and (ii) Boal, Quotient and the Trustee, on behalf of the Debtor's estate, shall provide full mutual releases of all claims known and unknown. The releases do not become effective until 91 days after the Trustee receives the last payment which is expected to be made in February or March 2023. The estate also retains the right to rescind the Settlement Agreement if

5

either Quotient or Boal file an insolvency proceeding at any time after entry of a final order approving the Settlement Agreement and 91 days from the last payment.

At the present time and pursuant to the terms of the Sharing Agreement, after payment of all chapter 7 administrative expenses, including contingency fees due to Litigation Counsel, taxes and allowed domestic support obligations, the Trustee estimates that the Debtor will receive approximately $565,000 as a result of the proposed settlement and that general unsecured creditors will receive approximately $850,000 on a pro-rata basis. These figures are estimates only and the actual amounts may vary depending on the amount of allowed administrative claims. .

## III.

## ARGUMENT

### A. The Standard for Approval of Settlements Under Bankruptcy Rule 9019

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that "on a motion by the trustee and after a notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). A proposed compromise and settlement should be approved when it is "fair and equitable" and "in the best interest of the [debtor's] estate." *Marin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). In *A&C Properties*, the Ninth Circuit held that whether a proposed settlement meets the requisite standards of fairness, equity and reasonableness, is a function of the following factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises. *A&C Properties*, 784 at 1381; Accord *Woodson v. Fireman's Fund Insur. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Every factor does not need to be satisfied provided that the factors as a whole favor approving the settlement. *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

This standard is deferential to the trustee's judgment and requires the Court only to "ensure that the trustee has exercised proper business judgment in making the decision to agree to the proposed settlement, and that the settlement 'falls above the lowest possible point in the range or

6

reasonableness.'" *See, In re Rake*, 363 B.R. 146, 148 (Bankr. D. Idaho 2007) (citations omitted). *See also*, *City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc*.), 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference."). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *In the Matter of Walsh Const., Inc*., 669 F.2d 1325, 1328 (9th Cir. 1982) (citations omitted).

The Settlement Agreement benefits the estate in at least three ways: (1) it provides for a prompt payment to the estate in the amount of $5,000,000 and will allow the Trustee to make distributions to creditors and the Debtor; (2) it eliminates the risk of getting nothing if the case is tried to a jury; and (3) it eliminates delay from protracted litigation and appeals. The proposed Settlement Agreement should be approved as it satisfies the standard set forth by the Ninth Circuit in *A&C Properties*.

1. <u>Probability of Success: There Is A Material Risk Of No Recovery If The Case Is Tried To A Jury</u>.

It is not clear who will prevail in this litigation although the Trustee contends that the estate has valid breach of contract and breach of fiduciary duty claims against Boal arising out of two oral agreements reached years ago. Boal disputes the existence of these agreements and contends (a) that the two year statute of limitations has expired, (b) that the alleged agreements lack consideration and are not sufficiently definite to be enforceable, and (c) that the Trustee is judicially estopped from bringing the Claims. Unsettled issues of fact and law exist which will yield vastly different outcomes to creditors and the estate depending how they are ultimately determined.

If the multiple legal issues are resolved in the Trustee's favor and the jury credits all of the Debtor's testimony, this case has significant value. As indicated, Fader claims he is owed 30% of Boal's gross proceeds from his sale of Quotient and 50% of Boal's sale of CashStar stock. The best-case damage calculation is $33,193,797. *See* Meade Decl. at ¶19. Although this potential

7

DOCS_SF:107880.9 77364/001
Case: 08-30119    Doc# 100-1    Filed: 10/19/22    Entered: 10/19/22 09:32:39    Page 10 of 13

upside is significant, it is dependent on a number of legal issues being resolved in the Trustee's favor. In addition, the Claims will be determined by a jury, with a material concomitant risk that the jury rejects the Debtor's testimony and returns a defense verdict.

Though this Court has rejected Boal's judicial estoppel argument at during the January 31, 2020 hearing on the Trustee's motion to approve the Sharing Agreement and again on its denial of Boal's motion to dismiss, Boal is likely to reassert it in the District Court, and further raise the issue on appeal. The defense has surface appeal and appeared to have some traction with the District Court when it expressed its skepticism with the Trustee's assertion of the decades old oral contract claims.

The Trustee's ability to overcome Boal's statute of limitations defense depends on the Debtor's testimony whose veracity Boal will likely challenge by attempting to introduce evidence of instances where the Debtor was untruthful during the relevant time period  If such evidence is admitted, the jury may be less likely to believe the Debtor on any issue.

The Trustee's ability to prevail on her argument that Boal is equitably estopped from asserting statute of limitation defenses depends on the Debtor's testimony to show that the Debtor extended Boal's time for performance in response to pleas by Boal for more time to pay, or alternatively that Boal induced the Debtor not to sue with promises to pay later. *See Walker v. City of San Clemente*, 239 Cal.App.4th 1350, 1370 (2015) (equitable estoppel defense to statute of limitations argument). At trial Boal will impeach the Debtor's testimony with the Debtor's own deposition testimony. Fader Transcript at 40:12-14 and 43:17-19.

Even if some portion of the Claims are be time-barred, the Trustee contends remaining portions can survive subject to the continuous accrual doctrine applicable to severable payment contractual obligations which trigger their own statute of limitations. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-1199 (2013). This Court has not addressed whether this doctrine applies on these facts. If it does not, and the jury rejects the Debtor's testimony on agreed upon extensions and promises by Boal to pay later, the Claims could be time-barred in their entirety.

Boal contends that because the agreements do not specify how much capital the Debtor was required to raise nor the time for performance, they are not enforceable. *See Kahn Creative*

8

*Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *4 (C.D. Cal. Mar. 29, 2011) (relied upon by Boal in support of indefiniteness argument). The Trustee disagrees because California law supplies the missing terms to prevent the contract from failing. *See, e.g.,* Cal. Civ. Code § 1657 ("If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 805 (1995) ("In the same vein, covenants to use 'good faith' or 'best efforts' to generate profits for the licensor are routinely implied where the licensor grants exclusive promotional or licensing rights in exchange for a percentage of profits or royalties, but the licensee does not expressly promise to do anything."). The outcome on this issue is uncertain if the Settlement Agreement is not approved.

2. Collection Difficulties are not a Factor.

The Trustee is not aware of collection difficulties that would be encountered in collecting a judgment against Boal. However, in an uncertain economic climate, it is possible that such circumstances could arise during the course of protracted litigation.

3. Complexity of Litigation.

Multiple factual and legal issues would need to be determined in the estate's favor to prevail at trial: the Debtor's failure to disclose the agreements on his bankruptcy schedules when he filed chapter 7 in 2008, whether the Trustee can be judicially estopped from asserting the Claims against Boal, whether the two year statute of limitations on oral agreements bar the estate's Claims in full or in part, and whether the oral agreements are sufficiently definite to be enforced. Many of the factual issues turn on the Debtor's credibility whose veracity is contested by Boal. The number of legal issues increases the risk of an adverse outcome and make an appeal likely if this matter were litigated to verdict. The proposed settlement alleviates the need to expend additional resources on potential experts, discovery, trial preparation, trial and appeal. The Trustee does not believe that prosecuting the Claims is justifiable given risk of a defense verdict and the benefits to the estate of the Settlement Agreement.

4. The Settlement is in the Best Interests of Creditors.

The Settlement Agreement is in the best interests of the estate and has been submitted in good faith. There is no certainty that the Trustee will prevail in the Adversary Proceeding and

without the settlement, there is the possibility of no recovery at all as the Claims are the only asset of the estate. The proposed settlement will provide a sum certain - $5,000,000 - to the estate which will be the only source of funds with which to make a distribution to creditors. If the settlement is not approved and the Trustee does not prevail on the Claims at trial, the estate and its creditors will receive nothing. In addition, the settlement effectuates a final and global release between the Trustee on behalf of the Debtor's estate and Boal and Quotient of all claims, known and unknown. Accordingly, the Settlement Agreement should be approved as it is fair and equitable and in the best interests of the estate.

Lastly, the Trustee has provided due and adequate notice of this settlement to those individuals and entities identified on the creditor's matrix, the United States Trustee, counsel for Boal, Quotient and the Debtor and all those who have requested special notice.

## IV.

## **CONCLUSION**

For the foregoing reasons, the Settlement Agreement should be approved and the Motion.

Dated: October 19, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Miriam Manning*
Kenneth H. Brown
Miriam Manning
Counsel for E. Lynn Schoenmann,
Chapter 7 Trustee