Kenneth H. Brown (CA Bar No. 100396)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: kbrown@pszjlaw.com
mmanning@pszjlaw.com

Counsel for E. Lynn Schoenmann,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PETER R. FADER<br>*dba* Urchin Capital Partners<br>*dba* Urchin Partners LLC,<br><br>Debtor. | Case No.: 08-30119-DM<br><br>Chapter 7<br><br>**DECLARATION OF TYLER MEADE IN SUPPORT OF MOTION TO APPROVE COMPROMISE OF ADVERSARY PROCEEDING AGAINST STEVEN R. BOAL AND QUOTIENT TECHNOLOGY PURSUANT TO FRBP 9019**<br><br><u>Hearing Date</u><br>Date: November 15, 2022<br>Time: 11:30 a.m.<br>Place: Courtcall/Videoconference<br>Judge: Honorable Dennis Montali |

I, Tyler Meade, hereby declare as follows:

1. I am special litigation counsel to E. Lynn Schoenmann, the duly appointed and acting chapter 7 trustee ("<u>Trustee</u>") of the estate of Peter R. Fader ("<u>Debtor</u>"). My retention as special litigation, contingency fee counsel was approved by this Court on November 13, 2019. I have personal knowledge of the facts set forth herein and, if called as a witness, I would and could competently testify thereto.

2. I submit this declaration in support of the *Motion to Approve Compromise of Adversary Proceeding against Steven R. Boal and Quotient Technology Pursuant to FRBP 9019* ("Motion")[1] filed concurrently herewith.

A. **The Claims.**

3. I along with the firm Dontzin Nagy & Fleissig LLP were retained as special litigation counsel to represent the Trustee in connection with the investigation and prosecution of certain claims against the Debtor's friend and business associate, Steven R. Boal ("Boal") and his company Quotient Technology, Inc. ("Quotient"). The investigation revealed evidence that prior to 2008, Boal promised to compensate the Debtor if he raised capital for Boal's two companies, Quotient and CashStar, Inc. ("CashStar"). Under the terms of the Quotient agreement, the existence of which Boal disputes, the Debtor contends that Boal agreed that 30% of all stock that was issued by Quotient to Boal was for the benefit of the Debtor and that when Boal sold the stock that 30% of the proceeds would be paid to the Debtor. The arrangement with CashStar was similar except that the Debtor alleges he was promised a 50% interest in the stock that was issued to Boal.

4. The Debtor attested that based on these oral agreements, he raised millions of dollars in capital for Quotient and CashStar but when he requested Boal to pay the promised compensation in 2018—after repeated agreements to extend the time for payment—Boal refused.

B. **The Adversary Proceeding.**

5. On behalf of the Trustee I filed a complaint December 9, 2019 in the Santa Clara County Superior Court against Boal and Quotient alleging claims for breach of oral contracts, breach of fiduciary duties, and for imposition of a constructive trust, declaratory relief, and an accounting. Boal removed the complaint to the Northern District Court. The matter was referred to the Bankruptcy Court where it is currently pending as Adversary Proceeding No. 20-03007.

6. The parties have engaged in extensive written discovery and depositions of the Debtor, Boal, and seven other percipient witnesses and motion practice.[2] Boal has stated his

---

[1] Capitalized terms that are not defined herein shall have the meaning ascribed to them in the Motion.

[2] The other deponents are Paul Bodor, Cynthia Dietzmann, Julie Down, Patrick Gilligan, Thomas Saidy, Adam Tracy, and Myron Wick.

intention to file a motion for summary judgment on multiple grounds after the close of fact discovery. Throughout the proceeding, Boal has disputed liability to the Trustee and contends that he never entered into oral agreements with the Debtor, and that no further sums are due to the Debtor. Boal also raises the following defenses:

        a) <u>Judicial Estoppel</u>

7. Boal contends that the Trustee is judicially estopped from asserting claims arising out of the oral agreements because they were not disclosed on his bankruptcy schedules when he filed his chapter 7 petition in 2008. The Bankruptcy Court rejected the Boal's judicial estoppel defense during the January 31, 2020 hearing on the Trustee's motion to approve the Sharing Agreement and in its memorandum decision denying Boal's motion to dismiss. *See*, *Memorandum Decision Regarding Motions to Dismiss*, dated October 30, 2020 ("<u>Decision</u>") at pp. 6-7. A true and correct copy of the relevant portions of the Decision are attached hereto as **Exhibit A**.

8. While the Bankruptcy Court has rejected the judicial estoppel defense, Boal has repeatedly signaled that he has not abandoned it, and it is likely that he will continue to raise it in the District Court after the reference is withdrawn for trial and on appeal.

9. The District Court signaled its initial negative view of this case in June 2020. During a June 11, 2020 hearing on a motion by Boal to withdraw the reference, the Hon. Vince Chhabria of the United States District Court observed:

> You have made -- you have referenced arguments about the -- the oral contract from 20 years ago and the propriety of this arrangement between the Trustee and Fader.
>
> I have a gut reaction about that. My gut reaction about that, for what it is worth, is that it causes me to raise my eyebrows; right. It seems -- the whole thing seems rather suspect to me for this -- for this person to be coming back and asserting an oral contract from 20 years ago and then entering into this arrangement with the Trustee.

June 11, 2020 Transcript in N.D. Cal. Case No. 20-CV-1610 at 18:11-19 ("<u>District Court Transcript</u>"). A true and correct copy of the relevant portions of the District Court Transcript are attached hereto as **Exhibit B.**

        b) <u>Statute of Limitations</u>

10. According to Boal, the Claims against him relating to Quotient in arose, at the latest in 2014 when Quotient went public and Boal sold some of his shares. As a result, Boal contends that the Claims became time-barred in 2016 under the applicable two year statute of limitations of Cal. Civ Proc. Code section 339(1) (although Boal also acknowledged that he continued to sell Quotient shares through 2016). Decision at p. 7. Boal also contends that the Claims relating to CashStar accrued in 2017. *Id.*

11. Although the Bankruptcy Court rejected the statute of limitations defense in denying Boal's motion to dismiss (Decision at pp. 7-9), I believe that Boal will likely raise this defense in his motion for summary judgment and at trial. The Trustee's ability to overcome this defense is uncertain and depends on the Debtor's testimony and his credibility. The Debtor has represented that he extended Boal's time for performance in response to pleas by Boal for more time to pay, or alternatively that Boal induced the Debtor not to sue with promises to pay later and therefore Boal is equitably estopped from asserting the Claims are time barred.

12. I believe that Boal will attack the Debtor's veracity and argue that the Debtor's deposition testimony supports the statute of limitations defense] because the Debtor testified that Boal never asked him not to sue (Transcript of Debtor's deposition, May 19, 2022 ("Fader Transcript" at pg. 40:6-8) and that the Debtor "believed [Boal] had violated the agreement consistently between 2011 and 2018." (Fader Transcript at 43:17-19.) A true and correct copy of the relevant portions of the Fader Transcript are attached hereto as **Exhibit C.**

13. I believe that the continuous accrual doctrine applies in this case and the Claims are therefore not time barred. The Court has not yet indicated whether this doctrine applies on the facts of this case.

c) Enforceability of the Agreements

14. Boal also contends the alleged oral agreements are not sufficiently definite to be enforceable because they neither specify how much capital the Debtor was required to raise, nor the time for performance. Even if this is true, California law allows a party to supply the missing contractual terms to prevent the contract from failing. The Bankruptcy Court has observed that the Claims are vulnerable if the details of the agreements are not proved:

> Nonetheless, Trustee will have to address the following material questions at some point to avoid possible summary judgment: When and where was the agreement between Debtor and Boal reached? What were the specific terms? Was there a minimum amount of capital that had to be raised? Was there a time frame for performance?

(Decision, at pg. 10). *See*, Exhibit A.

15. In 2020, Quotient was dismissed because the Bankruptcy Court determined the complaint did not adequately allege contractual agreements with Quotient. (Id.).

**C. The Settlement Agreement and A&C Factors**

16. On August 24, 2022, my co-counsel, Tibor Nagy, attended the mediation with the Trustee, along with Boal and Quotient and their counsel. I remained in contact with Mr. Nagy during the mediation. The settlement negotiations continued in good faith for approximately one week after the mediation session at which time a settlement, subject to Bankruptcy Court approval, was reached.

17. I believe that the Settlement Agreement benefits the estate in at least three ways: (1) it provides for a prompt payment to the estate in the amount of $5,000,000 and will allow the Trustee to make distributions to creditors; (2) it eliminates the risk of getting nothing if the case is tried to a jury; and (3) it eliminates delay from protracted litigation and appeals.

   a) Probability Of Success.

18. As noted above, it is not clear who will prevail in this litigation although the Trustee contends that the estate has valid breach of contract and breach of fiduciary duty claims against Boal arising out of two oral agreements. Boal disputes the existence of these agreements and contends (a) that the two year statute of limitations has expired, (b) that the alleged agreements lack consideration and are not sufficiently definite to be enforceable, and (c) that the Trustee is judicially estopped from bringing the Claims. Unsettled issues of fact and law exist which will yield vastly different outcomes to creditors and the estate depending how they are ultimately determined.

19. There is a risk of no recovery if the case is tried to a jury. If the multiple legal issues are resolved in the Trustee's favor and the jury credits all of the Debtor's testimony, this case has significant value. As indicated, Fader claims he is owed 30% of Boal's gross proceeds from his sale of Quotient and 50% of Boal's sale of CashStar stock. I believe that the best-case damage

calculation is $33,193,797. Although the potential upside may be significant, it is dependent on a number of legal issues being resolved in the Trustee's favor. In addition, the Claims will be determined by a jury, with a material concomitant risk that the jury rejects the Debtor's testimony and returns a defense verdict.

20. Though this Court has rejected Boal's judicial estoppel argument, Boal is likely to reassert it in the District Court where it appeared to have some traction when the Court expressed its skepticism with the assertion of the decades old oral contract claim.

21. The Trustee's ability to overcome the statute of limitations defense depends on the Debtor's testimony whose veracity Boal will likely challenge. I believe that Boal will attempt to introduce evidence of instances during the relevant time period where the Debtor was untruthful. If such evidence is admitted, the jury may be less likely to believe the Debtor on any issue.

22. The Trustee's ability to prevail on her argument that Boal is equitably estopped from asserting statute of limitation defenses depends on the Debtor's testimony to show that the Debtor extended Boal's time for performance in response to pleas by Boal for more time to pay, or alternatively that Boal induced the Debtor not to sue with promises to pay later. At trial Boal will likely attempt to impeach the Debtor's testimony with the Debtor's own deposition testimony.

23. Even if some portion of the Claims are time-barred, I believe that the remaining portions can survive subject to the continuous accrual doctrine applicable to severable payment contractual obligations which trigger their own statute of limitations. As indicated, this Court has not addressed whether this doctrine applies on these facts. If it does not, and the jury rejects the Debtor's testimony on agreed upon extensions and promises by Boal to pay later, the Claims could be time-barred in their entirety.

24. Boal further contends that because the agreements do not specify how much capital the Debtor was required to raise nor the time for performance, they are not enforceable. I disagree because California law supplies the missing terms to prevent the contract from failing. *See, e.g.,* Cal. Civ. Code § 1657 ("If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 805 (1995). The outcome on this issue is uncertain if the Settlement Agreement is not approved.

### b) Collection Difficulties are not a Factor.

25. I am not aware of collection difficulties that would be encountered in collecting a judgment against Boal or Quotient. However, in an uncertain economic climate, it is possible that such circumstances could arise during the course of protracted litigation.

### c) Complexity of Litigation.

26. As mentioned above, there are multiple factual and legal issues that would need to be determined in the estate's favor to prevail at trial: the Debtor's failure to disclose the agreements on his bankruptcy schedules when he filed chapter 7 in 2008, whether the Trustee can be judicially estopped from asserting the Claims against Boal, whether the two year statute of limitations on oral agreements bar the estate's Claims in full or in part, and whether the oral agreements are sufficiently definite to be enforced. Many of the factual issues turn on the Debtor's credibility whose veracity is contested by Boal. The number of legal issues increases the risk of an adverse outcome and make an appeal likely if this matter were litigated to verdict. The proposed settlement alleviates the need to expend additional resources on potential experts, discovery, trial preparation, trial and appeal. Prosecuting the Claims does not appear justifiable given risk of a defense verdict and the benefits to the estate of the Settlement Agreement.

### d) The Settlement is in the Best Interests of Creditors.

27. I believe that the proposed settlement is in the best interest of creditors because there is no certainty that the Trustee will prevail in the Adversary Proceeding and the settlement will provide a sum certain - $5,000,000 - to the estate which I understand will be the only source of funds with which to make a distribution to creditors. The settlement also effectuates a final and global release between the Trustee on behalf of the Debtor's estate and Boal and Quotient of all claims, known and unknown and will result in the dismissal of the Adversary Proceeding, with prejudice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 18th day of October 2022 at San Francisco, California.

                                               */s/ Tyler Meade*
                                               Tyler Meade

# EXHIBIT A

that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.

**V. DISCUSSION**

    A.   BOAL'S MTD

        *1.   Judicial Estoppel*

Boal argues that the doctrine of judicial estoppel precludes this adversary proceeding, particularly as Debtor is the primary beneficiary of any judgment. When Debtor filed this case in 2008, he admittedly did not schedule the purported oral contract with Boal on his schedules. *See* ¶¶ 4-7 of Debtor's Ex Parte Motion to Reopen Chapter 7 Case (dkt. 41 in Case No. 08-30119). He did not disclose that pursuant to this oral contract, he would allegedly receive 25 to 30 percent of the equity in Quotient, as well as stock in CashStar. *Id.; see also* ¶¶ 16-19 of the Complaint (dkt. 1-3).

After the court reopened the case, Trustee filed a motion to approve the litigation recovery agreement with Debtor (dkt. 55 in Case No. 08-30119). Boal objected (dkt. 62 in Case No. 08-30119), contending that the litigation sharing agreement was inequitable and designed to evade the doctrine of judicial estoppel. Overruling Boal's objections, the court entered an

-6-

order approving the litigation recovery agreement (dkt. 72) and will not revisit that holding in the context of the two motions to dismiss.

### 2. Statute of Limitations

Under California law, the statute of limitations based on a breach of oral contract is two years. Cal. Civ Proc. Code § 339(1). Boal contends that any breach of the purported Quotient agreement accrued in 2014 when the company went public and Boal sold some of his Quotient shares, although he acknowledges that he continued to sell Quotient shares through 2016. *See* Boal MTD at dkt. 28, ECF pgs. 17-18. Similarly, Boal contends that the statute of limitations bars Trustee's claims regarding the CashStar stock, as the Complaint alleges that Boal sold his CashStar stock in 2017, but gave Debtor only a "small fraction" of the earnings to which he was entitled.

In response to Boal's contention that her claims are time-barred, Trustee asserts that Debtor and Boal orally agreed to extend the payment dates to December 2018, thus equitably estopping Boal's invocation of the statute of limitations. This defense presents an issue of fact that cannot be resolved in the context of a motion to dismiss.

Under California law, a party may be equitably estopped from asserting the statute of limitations when his or her conduct induced another not to file a lawsuit within the applicable limitations period. *Walker v. City of San Clemente*, 239 Cal.App.4th 1350, 1370 (2015); *see also Atwater Elementary School Dist. v. California Dept. of General* Services, 41 Cal.4th 227, 232-233 (2007)("[w]here the delay in commencing action is

-7-

Case 08-30307 Doc# 108-3 Filed 01/30/22 Entered 01/30/22 04:28:39 Page 7 of 10

Case 20-03097 Doc# 103 Filed 01/30/22 Entered 01/30/22 09:34:39 Page 7 of 16

# EXHIBIT B

1  bankruptcy context, there are a number of arguments flying
2  around; right.
3       There is an argument -- there is this judicial estoppel
4  argument you just made.  On a gut level -- that are not made,
5  but are mentioned.  On a gut level, my first reaction is I
6  don't understand why this would be judicial estoppel.
7       But the -- I'm guessing that Judge Montali is quite a bit
8  more familiar with arguments relating to judicial estoppel in
9  the bankruptcy context than I am and much more able with
10  respect to that issue.
11      You have made -- you have referenced arguments about
12  the -- the oral contract from 20 years ago and the propriety of
13  this arrangement between the Trustee and Fader.
14      I have a gut reaction about that.  My gut reaction about
15  that, for what it is worth, is that it causes me to raise my
16  eyebrows; right.  It seems -- the whole thing seems rather
17  suspect to me for this -- for this person to be coming back and
18  asserting an oral contract from 20 years ago and then entering
19  into this arrangement with the Trustee.
20      But, again, it is a topic that I'm quite sure Judge
21  Montali is going to be much more familiar with than I am.  And
22  so even though generally, like, when we are talking about
23  magistrates -- I'm not a fan of -- not a fan at all of the
24  reported recommendation process.  And having -- you know,
25  having magistrate judges serve in that role.

**EXHIBIT C**

```
 1              UNITED STATES BANKRUPTCY COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4
 5   E. LYNN SCHOENMANN, Trustee
 6   for the Chapter 7 Bankruptcy
 7   Estate of Peter R. Fader,
 8               Plaintiff,    Adversary Proceeding No.:
 9   vs.                                  20-03007
10   STEVEN R. BOAL,
11               Defendant.
     -------------------------------/
12       Video-recorded Deposition of PETER R. FADER, at
13       Keker, Van Nest & Peters, LLP, 633 Battery
14       Street, San Francisco, California, commencing
15       at 9:07 a.m. PDT, Thursday, May 19, 2022,
16       before Lorrie L. Marchant, California CSR No.
17       10523.
18
19   Stenographically reported by:
20   LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
21   California CSR No. 10523
22   Washington CSR No. 3318
23   Oregon CSR No. 19-0458
24   Texas CSR No. 11318
25   Job No. SF 5212199
```

Page 1

```
1          MR. KIEVE:  Objection.  Asked and answered.      09:44
2          Tell him again, please.                          09:44
3          THE WITNESS:  He was representing that he        09:44
4   would.                                                  09:44
5          BY MR. PETERS:                                   09:44
6      Q.  Prior to December of 2018, did you ever tell     09:44
7   him you were going to sue him?                          09:44
8      A.  No.                                              09:44
9      Q.  Prior to 2018, did you and he ever have any      09:44
10  discussions about whether or not you would sue him?     09:45
11     A.  No.                                              09:45
12     Q.  Prior to 2018, did he ever ask you not to sue    09:45
13  him?                                                    09:45
14     A.  No.                                              09:45
15     Q.  What was it about Mr. Boal's conduct between     09:45
16  2011 and December of 2018 that made you believe he was  09:45
17  still complying with your alleged agreement?            09:45
18     A.  The agreement.                                   09:45
19     Q.  Well, what was it about his conduct during that  09:45
20  period, 2011 to December of 2018, that made you believe 09:45
21  he was still complying with the agreement?              09:45
22     A.  He made that representation.                     09:45
23     Q.  And what did he say?                             09:45
24     A.  "I'm working on it."                             09:45
25     Q.  And did you ever say to him, "You're working on  09:46
```

Page 40

Veritext Legal Solutions
866 299-5127

Case: 08-30119   Doc# 100-3   Filed: 10/19/22   Entered: 10/19/22 09:32:39   Page 15 of 16

| | | |
|---|---|---|
| 1 | MR. KIEVE: Objection to form. | 09:48 |
| 2 | BY MR. PETERS: | 09:48 |
| 3 | Q. And when you say you intimated it, what do you | 09:48 |
| 4 | mean by that? | 09:48 |
| 5 | A. I verbally referenced it. | 09:48 |
| 6 | Q. What did you say? | 09:48 |
| 7 | A. I said, "I need money." | 09:48 |
| 8 | Q. Okay. But you said you intimated that he had | 09:48 |
| 9 | violated your agreement; right? | 09:48 |
| 10 | A. I stated I needed money. | 09:48 |
| 11 | Q. Okay. But when you used the word "intimated," | 09:48 |
| 12 | you -- what did you mean by that? Did you mean you were | 09:48 |
| 13 | suggesting to him that he had violated the agreement? | 09:48 |
| 14 | A. Yes. | 09:48 |
| 15 | Q. And you believed he had violated the agreement? | 09:48 |
| 16 | A. Yes. | 09:48 |
| 17 | Q. And you believed he had violated the agreement | 09:48 |
| 18 | consistently between 2011 and 2018; right? | 09:48 |
| 19 | A. Correct. | 09:48 |
| 20 | Q. When he sold stock in 2015, you believed he had | 09:48 |
| 21 | violated the agreement; correct? | 09:49 |
| 22 | A. Yes. | 09:49 |
| 23 | Q. And every single time he sold stock under this | 09:49 |
| 24 | 13B plan and didn't pay you, you believed he had | 09:49 |
| 25 | violated the agreement; correct? | 09:49 |

Page 43