

Signed and Filed: March 3, 2023

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 08-30119-DM |
| PETER R. FADER, | ) |
| | ) Chapter 7 |
| | ) |
| Debtor. | ) **HEARING HELD** |
| | ) Date: February 3, 2023 |
| | ) Time: 10:30 AM |
| | ) |
| | ) |

### ORDER ON COUNSEL FOR CHAPTER 7 TRUSTEE'S FIRST INTERIM APPLICATION FOR COMPENSATION

Pachulski Stang Ziehl & Jones LLP ("Pachulski"), counsel for the Chapter 7 Trustee, has applied to the court for payment of interim fees in the amount of $287,607.00 and reimbursement of expenses in the amount of $1,652.09 (the "Application") (Dkt. 131). The court partially allowed fees in the amount of $175,000 and the entirety of expenses requested (Dkt. 143) and took the rest of the Application under submission.

The court evaluates the fee application pursuant to 11 U.S.C. § 330 (hereinafter "Section 330").

Section 330(a)(1) authorizes 'reasonable compensation for actual, necessary services rendered' by a

-1-

> professional. Section 330(a)(2) authorizes a court to award compensation that is less than the amount of compensation requested. Section 330(a)(3)(A) outlines factors a court should consider when determining what is reasonable compensation for services rendered. In addition, section 330(a)(4)(A) outlines when compensation should not be allowed.

*In re Mednet*, 251 B.R. 103, 106 (9th Cir. BAP 2000) (internal citations omitted).

Those factors outlined in Section 330 include "the rates charged . . . and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3). A bankruptcy court should examine additional circumstances to determine a reasonable fee, including whether the services performed were authorized. *In re Garcia,* 335 B.R. 717, 724 (9th Cir. BAP 2005) (citing *In re Mednet*, 251 B.R. at 108).

This order considers solely the rates charged by Pachulski partner Kenneth H. Brown, and whether certain work performed by Pachulski was authorized by the court.

**A.** **Hourly Rates**

Courts most commonly utilize the lodestar method to determine a reasonable fee pursuant to Section 330(a)(3). Under the lodestar method, a reasonable attorney's fee is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983)).

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court

-2-

sits. Within this geographic community, the district court should "tak[e] into consideration the experience, skill, and reputation of the attorney" to assess a reasonably hourly rate *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013) (citations and quotations omitted).

Aside from the hours spent on unauthorized work, which is discussed below, the court focuses on whether the hourly rates of Mr. Brown are reasonable pursuant to Section 330(a)(3).

Pachulski was authorized to represent the Chapter 7 Trustee effective September 16, 2019 (Dkt. 49). Pachulski's Employment Application (Dkt. 47) noted the current hourly rates for Mr. Brown ($975 per hour), Miriam Manning ($750 per hour), and paralegals ($350 per hour). The Employment Application further noted that the firm "adjusts its hourly rates from time to time based on the normal increases [Pachulski] charges to its clients."

According to the Fee Application, it appears that over the course of representation, Mr. Brown's hourly rate increased from $975 per hour to $995 per hour (a 2% increase), then to $1,225 per hour for 2021 (another 23% increase), then again to $1,395 per hour for 2022 (another 14% increase, or in other words, a 43% increase in hourly rates between 2019 and 2022). Nearly half of the hours billed by Mr. Brown were billed at the highest rate of $1,395 per hour, for work related to the Mediation category of the fee application.

The $20 per hour increase from 2019 to 2020 was typical and not unexpected. But the enormous increases in the next two years are surprising, if not shocking. It was not brought to

-3-

the attention of the court, and if the Trustee knew about it, her silence is troubling.

Pachulski argues that the increased hourly rates are in line with and actually below the hourly rates of large firms situated in New York and Delaware, and that its rates should be compared to attorneys in those communities given Pachulski's national experience and reputation.

The court disagrees, not with Pachulski's and Mr. Brown's assessment of their skills or reputations, but with the geographical and work-related comparisons. Pachulski enjoys a national reputation for its work in complex bankruptcy reorganizations and related litigation. Here, Pachulski was hired to be Chapter 7 Trustee's general counsel in what facially was a routine reopened Chapter 7 case, uniquely characterized by long-shot, high-stakes and uncertain litigation based upon an alleged oral agreement made years ago. That litigation was specifically to be handled solely by special counsel.

The court acknowledges that in the early stages of this litigation there were some hard-fought battles that included disputes over the litigation sharing arrangement between the debtor and the trustee, a possible withdrawal of the reference and other skirmishes. Pachulski was heavily involved and its contributions necessary and valuable. No adjustments have been made to the amounts sought for those efforts.

If Pachulski is concerned that its higher rates may not apply to future Chapter 7 cases, that may well be the case. The point of comparison should be the rates of other excellent general bankruptcy counsel and firms operating in the Northern

-4-

District of California representing Chapter 7 panel trustees, not those operating nationally with broader practice responsibilities.

While Pachulski has not provided rate comparisons on either a local or national basis to the court, the court does find a 43% rate increase over what was originally contemplated in the original Employment Application for work as general counsel for the Chapter 7 Trustee is unreasonable. As noted below, however, no adjustment has been made for these billing increases.

**B.      Unauthorized Work**

Pachulski's employment as general counsel to the Chapter 7 Trustee was approved with the explicit expectation that Pachulski "would not represent the Trustee in any litigation seeking to recover on the claims identified in the [employment] Application" and that special counsel would be hired specifically to represent the Trustee in litigation to recover on the claims against Steven R. Boal and related entities. As the record reflects, employment of special counsel was allowed by this court with a pre-approved contingency fee of 30 to 40% of amounts recovered, pursuant to 11 U.S.C. § 328, and amount commensurate with the potential difficulty of litigation and settlement. See Dkt. 53.

Now, Pachulski seeks compensation for work directly related to the litigation for which special counsel was hired, and for which Pachulski was meant to have no part. In particular, all work performed under the "Bankruptcy Litigation" and "Mediation" categories of the fee application was explicitly and solely related to the litigation for which special counsel was hired.

-5-

Pachulski argues this work was necessary because special counsel requested Pachulski's bankruptcy expertise due to the unexpected developments in litigation. The court questions why Pachulski did not bring to the court's attention that it was being called upon to render advice about the Litigation and Mediation topics prior to submission of this Application.

Pachulski's explanation that its work was both requested by special counsel and beneficial to the bankruptcy estate does not excuse the fact that the work performed in relation to that litigation was not authorized, leaving the court in the unsavory position of being asked to compensate a second firm for duplicative and unauthorized work.

This situation is all the more regrettable because it may have put Pachulski in the uncomfortable and awkward position of wanting to aid in the consummation of a successful settlement when refusing to do so may have jeopardized the efforts of special counsel, the Trustee and the firm itself to bring about that satisfactory solution. But to reduce the hard-won distribution to unsecured creditors by seeking substantial additional fees is equally unacceptable and cannot be tolerated.

C. <u>Conclusion</u>

For the reasons set forth above, the court finds it appropriate to reduce the amounts sought in the Bankruptcy Litigation and Mediation categories for being unauthorized though beneficial work, especially as both categories reflect work performed by Mr. Brown at his highest hourly rates. While Mr. Brown performed the majority of the work listed in the aforementioned categories, that work is blended with work

-6-

performed with his previous rates and with other Pachulski professionals. The court declines to engage in a specific line by line rate reduction as to Mr. Brown, but does acknowledge that a significant portion of the work in the Bankruptcy Litigation category and a portion in the Mediation category was necessary and consistent with the duties of general bankruptcy counsel. Accordingly, the court reduces the award related to the Bankruptcy Litigation category by one quarter, from $45,451.00 to $34,088.25, and reduces the award related to the Mediation category by one third, from $114,922.50 to $76,998.08.

Note, that despite the criticism of the undisclosed rate increases, the court is not making any additional adjustment, as that would amount to doubling the consequences to Pachulski. The court awards the rest of the fee application as is, amounting a total award of $238,319.83. Thus, an additional amount of $63,319.83 is allowed, with the balance of the fees requested disallowed.[1]

The court notes that under 11 U.S.C. § 328, the court cannot question pre-approved fees, except when the circumstances of those pre-approved fees "prove to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions." *In re Circle K. Corp.*, 279 F.3d 669, 671 (9th Cir. 2002).

This appears to be a textbook instance where the developments in litigation which could not have been anticipated

---

[1] Creditor, John Gaddy, objected to the fees (Dkt. 136), but did not attend the hearing. His objections are OVERRULED as without merit and for his lack of prosecution.

-7-

led to extra work by Pachulski not contemplated at the time special counsel was hired. *See, e.g., In re Circle K. Corp.*, 279 F.3d 669, 671 (9th Cir. 2002). Taking the applications of special counsel and general bankruptcy counsel together in context, there clearly was a contemplation that the services provided by each firm would be separate and distinct. It is only after the fact that the court now knows that what special counsel should have been doing was piled on and added to what Pachulski was doing. While the court will not initiate a second look at special counsel's fee arrangement *sua sponte,* it will welcome a voluntary fee reduction by special counsel after conferring with Pachulski and the Trustee or a motion by Pachuski for the court to consider such a reduction or contribution from special counsel to Pachulski for the reasons stated above.

*** END OF ORDER **

COURT SERVICE LIST

John Gaddy
2256 Wolfberry Way
Santa Rosa, CA 95404

Lisa H. Barry
398 Redwood Rd.
San Anselmo, CA 94960-2757