KIEVE LAW OFFICES
  LOREN KIEVE (56280)
  LK@KIEVELAW.COM
2655 STEINER STREET
SAN FRANCISCO, CALIFORNIA 94115
TELEPHONE:   (415) 800-3646
CELL:          (415) 425-2655
LK@KIEVELAW.COM

*Counsel for non-party Peter R. Fader
in Adv. Proc. No. 20-03007*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>    Peter R. Fader<br>    *dba* Urchin Capital Partners<br>    *dba* Urchin Partners LLC,<br><br>        Debtor. | Bankruptcy Case No. 08-30119<br><br>Chapter 7 |
| E. LYNN SCHOENMANN, TRUSTEE FOR THE CHAPTER 7 BANKRUPTCY ESTATE OF PETER R. FADER,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN R. BOAL; QUOTIENT TECHNOLOGY, INC., a Delaware corporation; and DOES 1 through 10,<br><br>        Defendants. | Adversary Proceeding No. 20-03007<br><br>**OPPOSITION OF NON-PARTY PETER FADER TO MOTION OF ATTORNEY WILLIAM F. ABBOTT FOR ATTORNEY FEES AND COUNTER-MOTION FOR DISGORGEMENT AND RETURN OF FEES, SANCTIONS AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR JUDICIAL NOTICE**<br><br>Date: June 2, 2023<br>Time: 10:30 a.m.<br><br>**THE HEARING WILL BE CONDUCTED BY VIDEO** |

Mr. Abbott's motion should be denied. To the contrary, on its face, it demonstrates that, as a matter of law, he should be required to disgorge the following fees he received from Mr. Fader without authorization from this Court and in violation of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and this Court's own rules governing fee agreements:

Case: 08-30119    Doc# 154    Filed: 05/20/23    Entered: 05/20/23 18:15:57    Page 1 of 20

1    $18,000 he was paid "during the first Adversary Proceeding."  Abbott Decl. ¶ 9.

2    $10,300 he was paid "[b]etween February, 2011 and January, 2012." *Id,* ¶ 10.

3    $2,000 he was paid "[i]n October, 2017." *Id.,* ¶ 16.

4    For a total of $30,300.

5    It also appears that Mr. Abbott was paid an additional $25,000 for representing Mr. Fader

6 in another lawsuit that presumably bears some relationship to the bankruptcy proceeding, given

7 that Mr. Abbott has included it in his declaration. *Id.,* ¶ 12.

8    If this is added to the $30,300 above, the total sum paid Mr. Abbott for representing Mr.

9 Fader in connection with the bankruptcy, adversary and bankruptcy-related cases is $55,300,

10 which, as a matter of law, he should be required to disgorge and return to Mr. Fader.

11    The Court should also impose appropriate monetary sanctions for this meritless filing, and

12 enjoin Mr. Abbott from breaching his obligation to maintain Mr. Fader's attorney-client privilege.

13    Mr. Fader so moves.

14                    ***Memorandum in Support***

15    There is so much wrong about Mr. Abbott's motion that it is difficult to determine where

16 to begin.[1]

17    Let's start with § 329(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2016(b).

18    ***Mr. Abbott's violation of § 329(a) of the Bankruptcy Code and Fed. R. Bank. Proc.***
19 ***2016(b) both <u>bars</u> his fee application and requires his <u>disgorgement</u> of fees improperly***
***received.***

20    Section 329(a) of the Bankruptcy Code provides that:

21       Any attorney representing a debtor in a case under this title, or in connection with
22 such a case, whether or not such attorney applies for compensation under this title, shall
file with the court a statement of compensation paid or agreed to be paid, if such payment
23 or agreement was made after one year before the date of the filing of the petition, for

---

[1] *See, e.g.,* Practices and Procedures in Judge Montali's Court (February 2022), preface (requiring a caption and text reference to telephonic/video hearings), II(J) (employment of professionals), III(H) (fee applications). Mr. Abbott has also not included a certificate of service or any evidence that he has properly served Mr. Fader. As the Court is aware, the undersigned counsel has been retained solely to represent Mr. Fader as a *non-party* in the Adversary Proceeding, and is filing these papers solely in that capacity. Counsel is *not* entering an appearance for Mr. Fader in his capacity as "Debtor" in the main bankruptcy case. These papers are being filed in that case only because that is the case in which Mr. Abbott has filed his fee motion.

services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Fed. R. Bankr. P. 2016(b) requires an attorney to file the statement of compensation required by § 329(a) within 14 days after the order for relief, or at another time as the court may direct. That Rule further provides that a supplemental statement of compensation shall be filed 14 days after any payment or agreement not previously disclosed. The obligations imposed by the statute and the rule apply, as here, in a chapter 7 case, even where assets of the estate are not in issue. *In re Ladevereaux,* No. 04-11376-RS, 2006 Bankr. LEXIS 388, at *24 (Bankr. D. Mass. Mar. 6, 2006) (These provisions . . . enable the court to monitor the relationship between debtor and counsel and thus to protect against overreaching by debtor's counsel").

These obligations continue throughout an attorney's representation. *Sundquist v. Bank of Am., N.A. (In re Sundquist),* 576 B.R. 858, 875 (Bankr. E.D. Cal. 2017) ("the payments and agreements subjected to disclosure reach back one year before the filing of the petition and extend after the filing of the petition indefinitely - theoretically, to the end of time. . . . The § 329 obligation of an attorney for the debtor to disclose fees and fee agreements is co-extensive with a debtor's involvement in a bankruptcy case and remains in effect for so long as § 1334 jurisdiction connected with that case survives.").

The only statement of compensation Mr. Abbott ever filed in any of these proceedings – including the main bankruptcy case (08-30119), the two adversary proceedings in 2008 and 2009 brought by the U.S. Trustee (AP 08-03080 and AP 09-03077) and the adversary proceeding brought by Ms. Schoenmann against Mr. Boal (AP 20-03007) – was the one he filed along with the voluntary petition in the main case over fifteen years ago on January 26, 2008, ECF Doc. No. 4, where he stated that he had received $6,000 "[f]or legal services rendered *or to be rendered* in contemplation of and in connection with this case" (emphasis added). It listed the "unpaid balance due and payable" as "0.00." *Id.*

The Court can take judicial notice of its own dockets to ascertain what is, and what is not, contained in them.

There is no other entry in any of the relevant dockets where Mr. Abbott complied with § 329(a) and Rule 2016(b).

*__Mr. Abbott must disgorge and return the fees he has improperly received without Court approval.__*

The decision of a sister Ninth Circuit bankruptcy court in *In re Blackburn*, 448 B.R. 28, 40 (Bankr. D. Idaho 2011), is compelling precedent for why Mr. Abbott is not only *not* entitled to any money from Mr. Fader, but why Mr. Abbott must be ordered to *return* the $55,300 he has wrongfully been paid without authorization of this Court:

> Disclosure under § 329(a) and Rule 2016(b) is essential in order to facilitate the Court's ability to monitor the reasonableness of fees and to prevent overreaching by debtors' attorneys. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) ("The Bankruptcy Code contains a number of provisions (e.g., §§ 327, 329, 330, 331) designed to protect the debtor from the debtor's attorney."); *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995); *see also In re Perrine*, 369 B.R. 571, 579-80 (Bankr. C.D. Cal. 2007). For this reason the disclosure requirements under the Code and Rules are not merely aspirations, they are mandatory. They impose an independent duty on an attorney to disclose the precise nature of the fee arrangement with the debtor in a candid and comprehensive manner. *See Park-Helena*, 63 F.3d at 881; *Perrine*, 369 B.R. at 580.

"The Court enjoys broad discretion in designing appropriate remedies to deal with violations of § 329(a) and Rule 2016(b). *See Dearborn Constr.*, 03.1 I.B.C.R. at 23, 2002 Bankr. LEXIS 1555 at *34. Attorneys who fail to comply with the disclosure requirements may be subject to denial or disgorgement of fees." *Id.*

As that court stressed,

> Section 329(a) clearly and unambiguously requires the disclosure of compensation paid or agreed to be paid for services rendered *or to be rendered* by an attorney representing a debtor in a bankruptcy case, or *in connection with a bankruptcy case*. This language, which is also incorporated into the 2016(b) disclosure form, is sufficiently broad to include payments for services to be rendered in a potential — and here expressly anticipated — adversary proceeding. Such a proceeding would, of course, have a "connection with" the bankruptcy case. It could not exist without it.

*Id.*, 448 B.R. at 42 (emphasis in the original).

As in *In re Blackburn*, Mr. Abbott's "non-disclosure in this case was significant. It deprived the Court of information essential to its ability to evaluate the nature and amount of compensation paid or promised to be paid to the Law Firm by Debtor[] for legal services." *Id.*, 448 B.R. at 43.

The state of the law is clear — an attorney who neglects to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently, forfeits the right to

receive compensation for services rendered and may be ordered to return fees already received. And the Court cannot simply "excuse" blatant failures to comply with the disclosure requirements of the Code and Rules. However, the Court has already determined that the Law Firm must turn over its $5,701 retainer to Trustee on other grounds. Therefore, based on the specific facts and circumstances here, it concludes that no additional sanction against the Law Firm is required.

*Id.*, 448 B.R. at 43 (cleaned up).

The Court should therefore (a) deny Mr. Abbott's fee application and (b) require him to repay the $55,300 he was wrongfully paid, without Court authorization, supervision or approval, for his ostensible representation of Mr. Fader. *Id.*; *see also Olson v. Anderson (In re Anderson)*, No. WW-14-1262-JuKiF, 2015 Bankr. LEXIS 3409, at *8 (B.A.P. 9th Cir. Oct. 7, 2015) ("[d]isgorgement is the expected remedy when a professional does not comply with the Bankruptcy Code or its Rules" (citation omitted); *In re Campbell*, 176 B.R. 558, 563 (Bankr. D. Idaho 1994) ("Failure to disclose payment under section 329(a) is grounds for return of the fees pursuant to section 329(b)(2). Accordingly, if Mr. Adamson's declaration is factual, he should return the $ 4,000.00 to the Campbells."); *cf. Zilaff (In re Kroeger Props. & Dev.)*, 57 B.R. 821, 823 (B.A.P. 9th Cir. 1986) (" Since professionals are charged with knowledge of the law, there is no unjust hardship in requiring them to observe the strict requirements of Section 327.").

This case is in no way akin to *Sundquist v. Bank of Am., N.A. (In re Sundquist)*, 576 B.R. 858, 864 (Bankr. E.D. Cal. 2017), cited by Mr. Abbott [at 4:5-15]. The court's lengthy exegesis in the case dealt with expungement of an attorney's lien, and did not address whether to approve a fee application. It had already done that in a prior order, which *nullified* a purported contingent fee agreement. *Sundquist v. Bank of Am., N.A.*, 566 B.R. 563, 597 (Bankr. E.D. Cal. 2017).

Nor does *In re Eliscu*, 139 B.R. 883, 886 (N.D. Ill. 1992), bear on the issue. The case simply holds that, "[w]here a party unreasonably prolongs litigation, a court possesses the inherent equitable powers to require that party to pay attorney's fees."

### Mr. Abbott has not come close to establishing his entitlement to any fees.

Even if Mr. Abbott is not required to disgorge his fees, he is certainly not entitled to any more, for the reasons set out above. Setting that aside, he has not shown his entitlement to more. It is axiomatic that an attorney seeking fees bears the burden of showing her entitlement to them.

*Godwin v. World Healing Ctr. Church, Inc.*, No. 8:21-cv-00555-JLS-DFM, 2021 U.S. Dist. LEXIS 251767, at *5 (C.D. Cal. Oct. 20, 2021):

> To determine the reasonable number of hours, the Court generally "begin[s] with the billing records the prevailing party has submitted," and excludes entries for hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202-03 (9th Cir. 2013) (internal quotations omitted). Trial courts "must," however, "carefully review attorney documentation of hours expended; padding in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum,* 24 Cal. 4th at 1132 (internal quotations omitted). The party moving for statutory attorney fees has the burden of proof. See *Mikhaeilpoor v. BMW of North Am., LLC,* 48 Cal. App. 5th 240, 247, 261 Cal. Rptr. 3d 679 (2020); *Corbett v. Hayward Dodge, Inc.,* 119 Cal. App. 4th 915, 926, 14 Cal. Rptr. 3d 741 (2004).

B.L.R. 1001-2(a) incorporates N.D. Cal. Civ. L.R. 54-5 ("*Motion for Attorney's Fees*"), which requires "detailed billing records showing how much time was spent on each task." *Huynh v. Hous. Auth. of Cty. of Santa Clara,* No. 14-CV-02367-LHK, 2017 WL 1050539, at *4 (N.D. Cal. Mar. 17, 2017).

Mr. Abbott has not even tried to meet these requirements He simply lists his lump sum "hours" for three matters, Abbott Decl. ¶ 9, but does not provide the source or basis for these totals. Although his memorandum asserts [at 4:28-5:6] that they are "reasonable," nothing in his declaration supports this naked conclusion.

### He has not produced a fee agreement.

Mr. Abbott refers to a "signed fee agreement," Abbott Decl. ¶ 4, "which appears to have been destroyed," but says that he has an "electronic unsigned copy," *id.* We don't know when it was "signed," under what circumstances or, most importantly, what may have been in it. His failure to provide *any* evidence of its contents bars his claim, without more. *In re Blackburn, supra,* 448 B.R. at 43.

### He has not substantiated his fee claim.

Mr. Abbott does not provide us with any bills he may have provided to Mr. Fader, or tell us that he sent him any bills. He avers, obliquely and without any support, that, among some "boxes" that were destroyed at some unknown point, "[i]t appears that, among the dozens of boxes were the actual bills for these matters." Abbott Decl. ¶ 11.

Case: 08-30119    Doc# 154    Filed: 05/26/23    Entered: 05/26/23 18:15:57    Page 6 of 20

Nor does he provide us with any of his actual time records (assuming he kept them, which he does not tell us he did). And he does not tell us how he came up with his hourly totals, or their source. As one district court has emphasized,

> The burden is on the moving party to present sufficiently detailed time records to justify the awarding of attorneys' fees based on the hours claimed. *Gates,* 987 F.2d at 1397 ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."); *Chalmers,* 796 F.2d at 1210 ("In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."). Because the movant bears this burden, the district court is "neither obligated to explain what type of records should be submitted, nor to request additional information." *In re Wash. Public Power Supply Sys. Secs. Litig.,* 19 F.3d 1291, 1306 (9th Cir. 1994). Accordingly, the court will not seek nor allow belated submission of further information about what the redacted portions actually reflect.

*Mitchell v. Chavez,* No. 113CV01324DADEPG, 2018 WL 3218364, at *8 n.7 (E.D. Cal. June 29, 2018); *cf. Guillory v. Hill,* 36 Cal.App.5th 802, 815 (2019), as modified (June 26, 2019), review denied (Oct. 16, 2019) ("plaintiffs had a duty to submit a reasonable request on the first try. ...).; *see also* N.D. Cal. Bkry "Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees"; Practices and Procedures in Judge Montali's Court (February 2022), II(J) (employment of professionals), III(H) (fee applications).

Mr. Abbott suggests [at 4:5-15] that the decision in *In re Sundquist* supports his fee application. As discussed above, it does not.

There is another reason why it doesn't. In *In re Sundquist,* the attorney submitted a description of her detailed time records for the case, over which the bankruptcy judge considering the fee request presided, so the court had recent, first-hand experience to verify them. *Sundquist v. Bank of Am., N.A.,* 566 B.R. 563, 597 (Bankr. E.D. Cal. 2017) ("This court, having presided over the entire stay violation litigation, is persuaded that $68,874.55 does not exceed the reasonable value of services rendered within the meaning of § 329(b).").

Attached as Ex. 1 is a copy of that fee request [Adversary Case No. 14-02278, Doc. Entry 458 ("Filed 09/12/17")], of which the Court may take judicial notice.

It sought $62,268 in fees, which is the amount, to the dollar, the court awarded. *Sundquist v. Bank of Am., N.A.,* 566 B.R. at 597 ("Here, the statement of lodestar fees in the hourly fee

Case No. 20-AP-03007

application documents 207.56 hours devoted to representation of the Sundquists in the stay violation matter and uses an hourly billing rate of $300.00, the product of which is $62,268.00.").

Mr. Abbott has done nothing of the sort.

**_Mr. Abbott has not submitted admissible evidence of his qualifications or the reasonableness of his fees._**

N.D. Cal. Civ. L.R 54-5(b)(3) requires a showing of the qualifications and experience and customary hourly charges of each person for whose services fees are being claimed.

Mr. Abbott's submission does not do so. There is no mention of his qualifications or experience. He has produced no competent evidence of the reasonableness of his fees, neither the rates charged nor the time he claims was spent doing whatever he did.

"The fee applicant has the burden to produce _evidence, other than the declarations of interested counsel_, that the requested rates are in accordance with those prevailing in the community for attorneys of comparable skill and reputation." _Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,_ No. 08-04567 CW, 2012 WL 161212, at *2 (N.D. Cal. Jan. 17, 2012) (citation omitted; emphasis added), _aff'd,_ 726 F.3d 1359 (Fed. Cir. 2013), and _aff'd,_ 726 F.3d 1359 (Fed. Cir. 2013). His declaration is therefore inadmissible and, without it, there is no basis for awarding him anything.[2]

---

[2] Other parts of his declaration are also objectionable and should be stricken. _E.g._,¶¶ 7 (conclusory), 9 (conclusory and without factual foundation), 11 (hearsay and conclusory), 13 (without foundation), 15 (hearsay and without foundation), 23 (hearsay and without foundation); 31 (hearsay). He references various communications, but does not include copies of them, so his testimony on their contents is inadmissible hearsay and should also be stricken. _E.g.,_ ¶¶ 27, 28, 37. Much of the remainder of his declaration is not only inadmissible hearsay, but erroneous, _e.g.,_ ¶¶ 18, 19, 22, 25, 30, 31, 32, 33, 37, but does not require a rebuttal for the Court to dismiss his application.

His request [at 5:16-23] that he be "relieved" of any further representation is nonsensical. As his own declaration shows, he has not represented Mr. Fader in these proceedings since the bankruptcy was closed some 13 years ago.

*Mr. Abbott's claim is untimely.*

> *He failed to file a fee application before, or even reasonably after, the case was closed in 2010 and is now barred by laches from seeking fees.*

If Mr. Abbott believed that the Court had authority to award him fees for his representation of Mr. Fader, the time for him to seek reimbursement for his claimed fees "arising from" the bankruptcy case was when the case was being closed on June 29, 2010. See N.D. Cal. Bkry Case No. 08-30119, ECF Doc. entry (June 29, 2010). *Wells Fargo Bank, N.A. v. Meda (In re Schugg)*, No. CV 07-1962-PHX-JAT, 2009 U.S. Dist. LEXIS 51227, at *6 (D. Ariz. June 10, 2009) ("common sense and judicial economy favor a timely motion for attorneys' fees so the Court can review the request close in time to the underlying substantive legal work performed").

N.D. Cal. Civ. L.R. 54-5(a) ("*Motion for Attorney's Fees*") requires that "[m]otions for awards of attorney's fees by the Court must be served and filed within 14 days of judgment . . . ."

Had Mr. Abbott timely sought fees in 2010, Mr. Fader and the Court would have been in a position to assess their propriety – and presumably would have been able to ascertain whether there was, in fact, a signed engagement letter, any time records, any billing records, or bills themselves. Having failed to do so, he is barred by laches from seeking them now, some 13 years after the event. There has been both indisputable "(1) inexcusable delay in the assertion of a known right and (2) prejudice to the party asserting laches resulting from the delay." *Murtagh v. Baker (In re Baker)*, No. 2:22-cv-05174-MCS, 2022 U.S. Dist. LEXIS 230885, at *6-10 (C.D. Cal. Dec. 22, 2022) (citation omitted) (finding inexcusable delay and prejudice because of the unavailability of relevant evidence).

> *He knew of a potential recovery in 2019, but did nothing to assert his claim for fees.*

Mr. Abbott acknowledges that he was aware of Mr. Fader's claim against Boal no later than "early 2019" and expected to be paid from any recovery. Abbott Decl. ¶¶ 22, 23.

As ostensible counsel of record, Mr. Abbott would have received ECF e-notices in the bankruptcy case, and he therefore would have received the Court's September 17, 2019 "Notice of Possible Dividend" that "It now appears that a payment of a dividend may be possible" and

1  requiring creditors to file a proof of claim "on or before 12/16/19." ECF Doc. No. 46. He made

2  no effort to collect his alleged fees. This too bars his claim. *In re Baker, supra.*

3      **Mr. Abbott's contract claim is barred by limitations.**

4      The statute of limitations for breach of a written contract is four years. Code of Civil

5  Procedure, § 337(a). Mr. Abbott's assertion [at 5:9-14] that Code of Civil Procedure, § 351

6  somehow "tolls" limitations is nonsense.[3] Under any reading of Mr. Abbott's declaration, the

7  four-year period had elapsed long before, as he, erroneously, asserts without any evidentiary

8  foundation [Abbott Decl. ¶ 15], Mr. Fader moved to Colorado in 2015.

9      By the same token, even assuming that Mr. Fader did pay Mr. Abbott $2,000 (for

10  something somehow related to his bankruptcy representation) in October 2017 [*id.,* ¶ 16], the

11  payment was, again, made over five years ago, so any contract claim is still barred by the four-

12  year statute.

13      **A sanctions award is appropriate.**

14      Sanctions should be imposed on Mr. Abbott, for two reasons. First, his motion clearly

15  violates his duty as an attorney to Mr. Fader to preserve the integrity of the attorney-client

16  privilege. Second, his motion is legally frivolous.

17      **Mr. Abbott has breached Mr. Fader's attorney-client privilege.**

18      Mr. Abbott avers [¶ 31] that "I have been advised by a well respected attorney that,

19  because the only existing relationship between myself and Mr. Fader was debtor and creditor, this

20  and all subsequent communications were not privileged." It is plain from what Mr. Abbott has

21  revealed in his declaration [¶¶ 23, 25, 33-37] that the discussions involved both the previous

22  bankruptcy and adversary proceedings and potential representation in another proceeding (against

23  Boal), both of which would be covered by privilege, and that he apparently considers himself to

24  be Mr. Fader's attorney [¶¶ 38, 39]. This is a *prima facie* case of unclean hands, of itself

25

26

---

27  [3] "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of

28  action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action." Code Civ. Proc., § 351.

warranting denial of his motion, and violation of privilege, warranting sanctions. He should also
be enjoined from any further violations of Mr. Fader's attorney-client privilege.

### *The fees motion is legally frivolous.*

Mr. Abbott's fee application is legally frivolous. Underlying it is a calculated and cynical
effort to interfere with the timely administration of the Schoenmann-Boal compromise settlement
and distribution of its proceeds that this Court approved.

### *Sanctions are warranted.*

In the words of the court in *Olson v. Anderson (In re Anderson),* No. WW-14-1262-JuKiF,
2015 Bankr. LEXIS 3409, at *20 (B.A.P. 9th Cir. Oct. 7, 2015), Mr. Abbott's "position was
entirely without legal foundation and the facts alleged in his declaration had no evidentiary
support." As in that case, Mr. Abbott is well "aware of the rules regarding compensation of
professionals employed in a bankruptcy case," *id.,* at *18-20, and has completely ignored them.

Pursuant to the Court's "inherent power to sanction vexatious conduct," *Hale v. United
States Tr.,* 509 F.3d 1139, 1148 (9th Cir. 2007), the Court should require Mr. Abbott to reimburse
Mr. Fader and his counsel for the time spent in responding to this motion. Mr. Fader's counsel
has expended substantially more than eight hours in preparing this opposition, and this Court has
approved his hourly rate of $900, Kieve Decl., *see In re RealtyShares, Inc.,* Case No. 20-30621,
ECF Doc. No. 37 (Sept. 23, 2021), warranting a sanctions award of $7,200. *In re Anderson,
supra.*

### *Conclusion*

Mr. Abbott's fee motion should be denied.

He should be required to disgorge the $55,300 in fees he has improperly received without
authorization of this Court.

He should be sanctioned in the amount of $7,200 pursuant to Fed. R. Bankr. P. 9011.

He should be enjoined from violating Mr. Fader's attorney-client privilege.

Dated:  May 19, 2023                                    Respectfully submitted,

                                                                    */s/ Loren Kieve*

1    Loren Kieve

2    Counsel for non-party Peter R. Fader

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 08-30119    Doc# 154    Filed: 05/20/23    Entered: 05/20/23 18:13:57    Page 12 of 20

Exhibit 1

# EXHIBIT 9

1   Dennise S. Henderson (SBN 208640)
    LAW OFFICES OF DENNISE S. HENDERSON
2   1903 Twenty First Street
3   Sacramento, California 95811
    Telephone:  (916) 456-2027
4   Email: dennise@Henderson-law.org

5
    Attorneys for Plaintiffs
6   Erik Sundquist and Renee
7   Sundquist

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SACRAMENTO

10

11   ERIK AND RENEE SUNDQUIST
12                                          Case No.:  10-35624
13              Plaintiffs,
                                            DECLARATION OF DENNISE
14   v.                                     HENDERSON ON ATTORNEYS FEES
                                            AND COSTS
15
16   BANK OF AMERICA, NA. BAC HOME
     LOAN SERVICING, LP, FEDERAL
17   NATIONAL MORTGAGE ASSC.,
     RECONTRUST; AND DOES 1-10
18
19              Defendants.

20

21   1.    I am an attorney licensed to practice before all of the courts of the State of
22
23   California and the Federal Courts in Eastern District of California.  I submit this
24   Declaration in support of the Court's order to submit fee agreements entered and
25   any funds accepted from the debtor in this Chapter 13 and the adversary proceeding
26
27   involving the violation of the stay.  I have personal knowledge of the facts I am
28   about to state and, if called on to do so, I can competently testify to those facts.

---

                             DECLARATION OF DENNISE HENDERSON
                                          Case No. 2010-35624
                            EXHIBIT 19  page 37

Case: 08-30119    Doc# 154    Filed: 05/20/23    Entered: 05/20/23 18:13:57    Page 15 of
                                        20

2.    In 2010 Plaintiff's Erik and Rene Sundquist hired, Dennise Henderson, to assist them in what eventually became the filing of a Chapter 13 petition. I handled all aspects of the bankruptcy, requested dismissal when the client was forced to move. When the case came back to the bankruptcy Court from Judge Nunley, I was noticed due to being counsel of record in the bankruptcy. I attempted to reach counsel of record on the adversary however, they never responded to my calls. In September 2014 the Sundquists retained me to represent them in the adversary proceeding before this Court. My purpose here is to describe in detail the services I provided to the Sundquists. I kept contemporaneous time records. Each day, when I completed a task, I would enter my time on my computer. If the Court requests, I will provide my time sheets. My time entries show I did the following work:

| Attorney | Date | Task | Time |
|---|---|---|---|
| D.Henderson | 10/22/14 | Meeting with client | 3.0 hours |
| D.Henderson | 11/19/14 | Status Conference | 1.0 hours |
| D.Hendeson | 1/28/15 | Status Conference | 1.0 hours |
| D.Henderson | 2-10-2015 | Researched current status of law on violations of the stay; foreclosure; and the extent of damages | 2.0 hours |
| D.Henderson | 3-17-2015 | First Amended complaint prepared and filed on behalf of Plaintiff | 3.0 hours |
| D.Henderson | 3-18-2015 | Status Conference | 1.0 hours |
| D.Henderson | 5-5-2015 | Review Motion to dismiss First Amended complaint and memorandum of points and authorities' filed by BANA | 1.0 hours |
| D.Henderson | 5/5/2015 | Research case law on Defendants Motion to dismiss filed by BANA | 1.5 hours |
| D.Henderson | 5/7/15 | Review Amended Motion to Dismiss First Amended Complaint By BANA | .5 hours |

| | | | | |
|---|---|---|---|---|
| D.Henderson | 6/24/2015 | Status Conference | 1.0 hours |
| D.Henderson | 7/13/15 | Research case law and Defenses raised by BANA | 1.5 hours |
| D.Henderson | 7-15-15 | Second Amended complaint prepared and filed on behalf of Plaintiff | 3.0 hours |
| D.Henderson | 8-7-15 | Meet/confer re: discovery; resolution deadlines | 1.0 hours |
| D.Henderson | 8-18-2015 | Review Motion to Dismiss filed by BANA | .5 hours |
| D.Henderson | 8-19-2015 | Research Case law on Defendants motion to dismiss | 1.5 hours |
| D.Henderson | 8/19/15 | Status Conference | 1.0 hours |
| D.Henderson | 10-5-15 | Prepare and filed opposition to motion to dismiss filed by Plaintiffs | 3.0 hours |
| D.Henderson | 10/13/15 | Review Response to Opposition filed by BANA | .5 hours |
| D.Henderson | 10/21/15 | Received and reviewed discovery from client | 3.0 hours |
| D.Henderson | 11/4/2015 | Prepared a request for Production of Documents Set 1 | 2.0 hours |
| D.Henderson | 11/5/15 | Defendants make claim to protective order required for Discovery requests Researched law on discovery and protective orders | 2.0 hours |
| D.Henderson | 11-6-15 | Objected to defendants withholding docs All efforts refused.  Same documents they stated they would provide in their initial disclosures | .30 hours |
| D.Henderson | 11/6-15 | Reviewed protective order sent over by Defendants BANA | .5 hours |
| D.Henderson | 11-17-15 | Prepare Notice of depos sent to Reed Smith employees and Person Most Knowledgeable | 1.5 hours |
| D.Henderson | 11/19/15 | Review defendant BANAs Answer to second amended complaint | .5 hours |
| D.Henderson | 12-13-15 | Investigation research to find BANA employees subpoenaed as Defendants now state they are no longer employees with BANA | 5.0 hours |
| D.Henderson | 12-22-15 | Prepare and file motion to compel discovery exhibits, Memorandum of points and authorities and Declaration by Plaintiff | 4.0 hours |
| D.Henderson | 12/28/15 | Deposition on Erik Sundquist | 7.0 hours |

DECLARATION OF DENNISE HENDERSON
Case No. 2010-35624

**EXHIBIT 3 · page 39**

Case: 08-30119    Doc# 154    Filed: 05/20/23    Entered: 05/20/23 18:13:57    Page 17 of 20

| # | | | | |
|---|---|---|---|---|
| 1 | | 12/29/15 | Deposition on Renee Sundquist | 8.0 Hours |
| 2 | D.Henderson | 12/15/15/ thru 1/2016 | Investigation telephone conference 3 times with Alexandra Furlong former BANA employee with witness present | .5 hours |
| 3 | | | | |
| 4 | D.Henderson | 1-26-16 | Pretrial Statement prepared and filed | 2.0 hours |
| 5 | D.Henderson | 2-9-16 | Amended Pretrial Statement prepared and Filed | 2.0 hours |
| 6 | D.Henderson | 2/9/16 | Deposition on Person most Knowledge-able from BANA conducted by Plaintiff | 6 hours |
| 7 | | | | |
| 8 | D.Henderson | 2/19/16 | Review defendants motion in Limine to exclude irrelevant evidence | .5 hours |
| 9 | D.Henderson | 3/3/16 | Final follow up Deposition of Person most knowledgeable from BANA conducted by Plaintiffs | 5 hours |
| 10 | | | | |
| 11 | D.Henderson | 3/9/16 | Review defendants motion for protective order | .5 hours |
| 12 | D.Henderson | 3/9/16 | Pretrial Conference | 1.0 hours |
| 13 | D.Henderson | 3/16/16 | Plaintiff Prepare and file Opposition to motion in limine filed by BANA | 2.0 hours |
| 14 | D.Henderson | 3/21/16 | Review response by BANA on motion | .5 hours |
| 15 | D.Henderson | | Meet confer re: motion for protective order | .5 hours |
| 16 | D.Henderson | 3/28/16 | Plaintiff prepared and filed opposition to Defendants Motion for protective order | 2.0 hours |
| 17 | D.Henderson | 3/29/16 | Plaintiffs filed and prepared a third Amended Pretrial statement | 2.0 hours |
| 18 | | | | |
| 19 | D.Henderson | 4/12/16 | Hearing Motion application for protective order Motion on Application to compel | 1.5 hour |
| 20 | | | | |
| 21 | D.Henderson | 5/12/16 | Plaintiffs prepared and filed Motion in Limine with memorandum of point and authorities | 2.0 hours |
| 22 | | | | |
| 23 | D.Henderson | 5/13/16 | Review defendants Motion in Limine and memorandum of points and authorities No.1 | .50 hours |
| 24 | D.Henderson | 5/13/16 | Review defendants Motion in Limine and memorandum of points and authorities to exclude evidence other lawsuits No.2 | .59 hours |
| 25 | | | | |
| 26 | | | | |
| 27 | D.Henderson | 5/13/16 | Review defendants Motion in Limine and memorandum of point and authorities No.3 | .50 hours |
| 28 | | | | |
| | D.Henderson | 5/13/16 | Review Defendants Motion in Limine | .50 hours |

DECLARATION OF DENNISE HENDERSON
Case No. 2010-35624

EXHIBIT "9" page 40

| | | | |
|---|---|---|---|
| | | and memorandum of points and authorities No.4 | |
| D.Henderson | 5/13/16 | Review Defendants Motion in Limine and memorandum of points and authorities No.5 | .75 hours |
| D.Henderson | 5/13/16 | Research on case laws and defenses raised by BANA in all Motions in limine No. 1 thru 5 | 4.0 hours |
| D.Henderson | 5/13/16 | Review Defendants Amended Notice of defendant's motion in Limine No.1 thru No.5 also to include amended notice of defendant's motion to allocate and amended notice for judicial notice | .42 hours |
| D.Henderson | 5/16/16 | Review Defendants Opposition to Plaintiffs motion in Limine | .5 hours |
| D.Henderson | 5-16-16 | Review Defendants Trial Brief | 1.0 hours |
| D.Henderson | 5/16/16 | Prepare and File Trial Brief on behalf of Plaintiffs | 1.5 hours |
| D.Henderson | 5/16/16 | Prepared and served Trial Binders to court | 3.5 hours |
| D.Henderson | 5/16/16 | Met with Plaintiffs to discuss trial procedures | 1.5 hours |
| D.Henderson | 5/17/16 | Reviewed CD from BANA with defendant's exhibit binder files. Plaintiffs' attorney had to print all records out from CD provided by BANA | 1.5 hours |
| D.Henderson | 10/2015 thru 5/17/16 | Reviewed discovery records provided by BANA over a large period of time. Discovery records total of 5069 pages of discovery provided to plaintiff | 84.0 hours |
| D.Henderson | 5/17/16 | Reviewed transcripts depositions and declarations before trial | 3.0 hours |

| | | | |
|---|---|---|---|
| D.Henderson | 5-18-2016 | Trial Hearing | 6.0 hours |

| | | | |
|---|---|---|---|
| D.Henderson | 5-19-2016 | Trial Hearing | 6.0 hours |
| D.Henderson | 5-23-2016 | Trial Hearing concluded | 3.0 hours |

Total hours:    207.56 hours

Hourly rate:    $300 per hour

DECLARATION OF DENNISE HENDERSON
Case No. 2010-35624

EXHIBIT 9 page 41

Case: 08-30119    Doc# 154    Filed: 05/20/23    Entered: 05/20/23 18:13:57    Page 19 of 20

1   Total fees:    $62,268 (hours x $300 per hour)

2        3.     Total hard cost associated with this matter included the following:

3

4            1. Deposition Costs, Person Most knowledgeable, and purchase of

5       Deposition transcripts of Erik and Renee Sundquist.

6            2. Trial Binder material and printing of BANAS Trial Binder

7            3. Transcripts from hearings

8

9      Total hard cost: $   6,606.55

10

11     I declare under penalty of perjury that the foregoing is true and correct.

12   Executed on September 26, 2016, at Sacramento, California.

13

14                             Dennise Henderson

15

16

17

18

19

20

21

22

23

24

25

26

27

28