Kenneth H. Brown (CA Bar No. 100396)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: kbrown@pszjlaw.com
         mmanning@pszjlaw.com

Counsel for E. Lynn Schoenmann,
Chapter 7 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 08-30119-DM |
| PETER R. FADER<br>*dba* Urchin Capital Partners<br>*dba* Urchin Partners LLC,<br><br>Debtor. | Chapter 7<br><br>**DECLARATION OF MIRIAM MANNING IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIM NO. 19 FILED BY THOMAS S. LEE**<br><br><u>**Hearing Date:**</u><br><br>Date: October 26, 2023<br>Time: 1:30 PM<br>Place: Telephonically/Videoconference<br>Judge: Honorable Dennis Montali<br><br><u>**Response Deadline**</u>: October 12, 2023 |

I, Miriam Manning, declare as follows:

1.      I am an attorney in the law firm of Pachulski Stang Ziehl & Jones LLP. Our office represents E. Lynn Schoenmann, the trustee ("Trustee") of the chapter 7 case of Peter R. Fader ("Debtor").

2.      I submit this declaration in support of the *Trustee's Objection to Claim No. 19 Filed by Thomas S. Lee.* I have personal knowledge of the facts set forth herein and, if called as a witness, I would and could competently testify thereto.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**A.      The Debtor's Bankruptcy Filing**

3.      The docket in the Debtor's bankruptcy case reveal the following facts.  On January 26, 2008, the Debtor, aka Urchin Capital Partners and Urchin Partners LLC, filed a voluntary chapter 7 petition in this Court.  The Debtor received a discharge and the bankruptcy case was subsequently closed in 2010.

4.      The Debtor's amended schedule F filed on March 31, 2008 listed a "Tom Lee" with a disputed $100,000 claim for a 'loan.' [Dkt 16].  Based on the similarity of the names, I believe that Tom Lee is the same individual as Thomas S. Lee, the Claimant herein.

5.      The Debtor's schedule B, filed on January 26, 2008, states that the Debtor held a 75% membership interest in Urchin Capital Partners ("Urchin") and a 100% membership interest in Urchin Partners LLC.   [Dkt 1].

6.      On July 14, 2019, the Debtor filed an application to reopen his bankruptcy case to disclose claims based on an oral agreement that was previously omitted from his bankruptcy schedules and to enable the Trustee to determine whether such previously omitted claims constitute property of the estate that can be administered by the Trustee.

7.      On September 13, 2019, the United States Trustee appointed E. Lynn Schoenmann as the Chapter 7 trustee of the Debtor's bankruptcy case.  On September 15, 2019 the Debtor's bankruptcy case was reopened.

**C.      The Proof of Claim and Communications with Claimant**

8.      Attached hereto as **Exhibit A** is the claim filed by Thomas S. Lee on December 12, 2019, asserting a $100,000 general unsecured claim for "money loaned" (the "Claim").

9.      In response to my request for additional information and documentation substantiating the Claim, on June 15, 2023, Claimant emailed me and advised that the Claim represented an investment in Urchin but that he might not have the signed subscription agreement. Attached to that email was an email from November 2006 between Claimant and Brian Dennen, a former officer of Urchin, regarding the subscription agreement that Claimant had requested and in which Claimant asks, "also can you confirm that I am investing at the same terms as others to this

subscription." Attached hereto as **Exhibit B** is a true and correct copy of the June 15, 2023 email and attachments.[1]

10.      On June 29, 2023, Claimant emailed and confirmed that he had signed a subscription agreement relating to his $100,000 investment in Urchin but that the signed copy was on an old computer that had been stolen.  Attached hereto as **Exhibit C** is a true and correct copy of the June 29, 2023 email.

11.      On June 30, 2023, Claimant advised that his attorney was looking for the signed copy of the subscription agreement and forwarded an email string from November 2006 where his counsel provided an analysis of the Subscription Agreement and Members' Agreement.  Attached hereto as **Exhibit D** is a true and correct copy of the June 30, 2023 email.

12.      On June 30, 2023, Claimant forwarded copies of the unsigned version of the Subscription Agreement and Members' Agreement.  Attached hereto as **Exhibit E** is a true and correct copy of the June 30, 2023 email and attachments consisting of the Subscription Agreement and Members' Agreement.

13.      No previous request for the relief sought in the Objection has been made by the Trustee.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 25, 2023 at Ross, California.

*/s/ Miriam Manning*
Miriam Manning

---

[1] Claimant also attached an unsigned promissory note from the Debtor dated July 17, 2017 which is not relevant to the Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1

**<u>EXHIBIT A</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor 1 **Peter R. Fader**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Northern District of California

Case number **08-30119 DM 7**



**FILED**

DEC 1 2 2019 /mr

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Thomas S. Lee
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Thomas S. Lee
Name

2215 York Road, Suite 410
Number        Street

Oak Brook          IL          60523
City              State        ZIP Code

Contact phone 630-571-8615

Contact email tslee234@gmail.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Where should payments to the creditor be sent? (if different)

Name _____

Number        Street _____

City              State        ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

Case 08-30119   Doc# 189-1   Filed: 12/25/23   Entered: 09/25/23 11:33:48   Page 5 of 39

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ _____100,000.00 . Does this amount include interest or other charges?

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned _____

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*                                                                              Amount entitled to priority

   ☐ Domestic support obligations (including alimony and child support) under
      11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                            $_____

   ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for
      personal, family, or household use. 11 U.S.C. § 507(a)(7).         $_____

   ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the
      bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
      11 U.S.C. § 507(a)(4).                    $_____

   ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

   ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

   ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.    $_____

     * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3: Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/06/2019
                 MM / DD / YYYY

         _____
         Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Thomas | Sturges | Lee |
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2215 York Road, Suite 410 | | |
| | Number    Street | | |
| | Oak Brook | IL | 60523 |
| | City | State | ZIP Code |
| Contact phone | 630-571-6815 | Email | tslee234@gmail.com |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**From:** tslee234@gmail.com
**Sent:** Thursday, June 15, 2023 12:51 PM
**To:** Miriam Manning
**Subject:** RE: Peter Fader - Lee Claim No. 19
**Attachments:** Promissory Note.pdf; RE: Urchin Subscription Documents

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Miriam,
I have attached a couple of items from the Urchin and Peter. There is the email for my subscription agreement for my
$100k investment which was listed in the bankruptcy
Filing. I am working to find my signed copy. I may have sent it in with my filing. I am fearful that the copy of the signed
subscription agreement was on my computer that was stolen fm rental car in 2022 in Oakland. I will keep looking.
Let me know if you have any questions.
Best,
Tom

---

**From:** Miriam Manning <mmanning@pszjlaw.com>
**Sent:** Tuesday, June 13, 2023 1:46 PM
**To:** 'tslee234@gmail.com' <tslee234@gmail.com>
**Cc:** Miriam Manning <mmanning@pszjlaw.com>
**Subject:** Peter Fader - Lee Claim No. 19

Dear Mr. Lee,

To follow up on our call from a moment ago, please provide our office with whatever documentation you have to
substantiate the $100,000 claim that you filed in Mr. Fader's bankruptcy case. Your proof of claim is attached here for
ease of reference. You mentioned that you have documents that relate to this claim. You may provide those
documents to our office by attaching them to your response to this email. Best regards,

**Miriam Manning**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 415.217.5117
Tel: 415.263.7000 | Fax: 415.263.7010
mmanning@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

| From: | Lee |
|---|---|
| Sent: | Thursday, November 30, 2006 1:38 PM |
| To: | 'Brian Dennen' |
| Cc: | Peter Fader |
| Subject: | RE: Urchin Subscription Documents |

Brian,

Tks for the agreements.

can you send me the Operating Agreement for Urchin and last yr Financial Statements along next yr projections?

also can you confirm that I am investing at the same terms as others to this subscription.

Rgds, Tom

---

**From:** Brian Dennen [mailto:brian@urchinpartners.com]
**Sent:** Tuesday, November 28, 2006 5:31 PM
**To:** Lee, Tom
**Subject:** Urchin Subscription Documents

Tom,

Peter asked that I provide you with the subscription agreements for Urchin Capital Partners.

Please let me know if you have any questions.

Thanks,

Brian Dennen

**Urchin Capital Partners, LLC**
655 Montgomery St., Suite 900
San Francisco, CA 94111
O: 415-869-3752
F: 415-262-3878
IM: bdennen7467
brian@UrchinPartners.com
www.urchinpartners.com

*This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.*

# PROMISSORY NOTE

$75,000.00                                                          San Francisco, California
Due on July 31, 2017                                                          April 30, 2017

    **1.     Principal**.  FOR VALUE RECEIVED, Peter Fader ("Borrower" or "Maker"), promises to pay to the order of THOMAS LEE at 211 Gough Street, San Francisco, California, or at such other place as may be designated from time to time by the holder of this Note, and without set-off or counterclaim, the principal sum of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), together with accrued interest in the amount of $22,500, in accordance with the terms of this Note.

    **2.     Interest Rate**.  Interest on the principal balance of this Note from time to time outstanding shall accrue from the date hereof, at the rate of ten percent (10%) per annum.

    **3.     Payments**.  Principal and interest and other sums due under this Note are payable on July 31, 2017.

    **4.     Default**.  Each of the following shall constitute an Event of Default under this Note:  **(a)** the failure to make any payment required by this Note when due hereunder.

    **5.     Collection Costs**.  Borrower agrees to pay all costs of collection and enforcement when incurred, whether or not any suit, action or proceeding is commenced, including but not limited to attorneys' and experts' fees and costs.  If any suit, action or proceeding is instituted to collect upon or enforce this Note, the holder hereof shall be entitled to recover prejudgment interest on all principal, interest and other sums due hereunder and thereunder, and Borrower shall pay, in addition to all costs and disbursements otherwise allowed by law, such sum as may be fixed for attorneys' and experts' fees and costs in such suit, action or proceeding.

    **6.     Severability**.  If any term or provision of this Note, or the application of it to any party or circumstance, is held to be invalid or unenforceable, the remainder of this Note, and the application of such term or provision to any other party or circumstance, shall not be affected thereby, the provisions of this Note being severable in any such instance.

    **7.     Time of Essence**.  Unless otherwise expressly set forth herein, all references in this Note to "days" shall mean and refer to calendar days.  Time is of the essence of this Note and each and every provision and obligation hereunder.

    **8.     Lawful Money**.  Principal, interest and all other sums payable hereunder shall be paid in lawful and immediately available money of the United States.

    **9.     Governing Law**.  This Note shall be governed by and construed in accordance with the laws of the State of California.

_____
PETER R. FADER, MAKER

1    **<u>EXHIBIT C</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**From:**                   tslee234@gmail.com
**Sent:**                   Thursday, June 29, 2023 7:14 AM
**To:**                        Miriam Manning
**Subject:**              RE: Peter Fader - Lee Claim No. 19

**Follow Up Flag:**        Follow up
**Flag Status:**            Flagged

Miriam,
I am still working to try find some old files. As I explained, I had a signed subscription agreement copy on my old computer which was stolen.
The 100K investment was made at that time into Urchin Capital Partners. A unsigned copy of the subscription agreement was sent to you.
I have also contacted my attorney to see if he might have a signed copy as he was involved in the review of the document with Brian Dennen,
The COO at Urchin.

Best,
Tom

**From:** Miriam Manning <mmanning@pszjlaw.com>
**Sent:** Tuesday, June 27, 2023 4:47 PM
**To:** 'tslee234@gmail.com' <tslee234@gmail.com>
**Cc:** Miriam Manning <mmanning@pszjlaw.com>
**Subject:** RE: Peter Fader - Lee Claim No. 19

Mr. Lee,

I don't believe I have received a response since my June 23rd email to you.     Please confirm that the basis of your $100,000 claim is the investment you made in Urchin Capital Partners and if you were able to locate any documents regarding this investment, including the subscription agreement you noted in your email.

Regards,

Miriam Manning

**From:** Miriam Manning
**Sent:** Friday, June 23, 2023 10:50 AM
**To:** 'tslee234@gmail.com' <tslee234@gmail.com>
**Cc:** Miriam Manning <mmanning@pszjlaw.com>
**Subject:** RE: Peter Fader - Lee Claim No. 19

Mr. Lee,

The first document you provided was a promissory note from 2017 for $75,000.   Because that loan was made to Mr. Fader *after* Mr. Fader filed his bankruptcy case in January 2008, it cannot serve as the basis for a claim against his bankruptcy estate.   Only claims that arose before his bankruptcy filing can be considered.

The second document you provided were two emails from 2006 relating to your purported subscription investment in Urchin Capital.   Please confirm that the subscription agreement is the basis for the $100,000 claim that you filed in the bankruptcy case and let me know if you have located any documents evidencing this transaction.   Thank you,

Miriam

---

**From:** tslee234@gmail.com [mailto:tslee234@gmail.com]
**Sent:** Thursday, June 15, 2023 12:51 PM
**To:** Miriam Manning <mmanning@pszjlaw.com>
**Subject:** RE: Peter Fader - Lee Claim No. 19

Miriam,
I have attached a couple of items from the Urchin and Peter. There is the email for my subscription agreement for my $100k investment which was listed in the bankruptcy
Filing. I am working to find my signed copy. I may have sent it in with my filing.  I am fearful that the copy of the signed subscription agreement was on my computer that was stolen fm rental car in 2022 in Oakland. I will keep looking.
Let me know if you have any questions.
Best,
Tom

---

**From:** Miriam Manning <mmanning@pszjlaw.com>
**Sent:** Tuesday, June 13, 2023 1:46 PM
**To:** 'tslee234@gmail.com' <tslee234@gmail.com>
**Cc:** Miriam Manning <mmanning@pszjlaw.com>
**Subject:** Peter Fader - Lee Claim No. 19

Dear Mr. Lee,

To follow up on our call from a moment ago, please provide our office with whatever documentation you have to substantiate the $100,000 claim that you filed in Mr. Fader's bankruptcy case.   Your proof of claim is attached here for ease of reference.   You mentioned that you have documents that relate to this claim.   You may provide those documents to our office by attaching them to your response to this email.     Best regards,

**Miriam Manning**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 415.217.5117
Tel: 415.263.7000 | Fax: 415.263.7010
mmanning@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

1　　　　　　　　　　　　　　　　**EXHIBIT D**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | |
|---|---|
| **From:** | tslee234@gmail.com |
| **Sent:** | Friday, June 30, 2023 6:31 AM |
| **To:** | Miriam Manning |
| **Subject:** | FW: Urchin Subscription Documents |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

My lawyer is trying to locate the document.

**From:** Froy, Michael M. <mfroy@sonnenschein.com>
**Sent:** Thursday, November 30, 2006 3:21 PM
**To:** Lee, Tom
**Subject:** RE: Urchin Subscription Documents

Attorney Client Privileged

Tom

I have taken a look at the attached and have the following thoughts:

- The two documents on their face seem fine. The Subscription Agreement has typical representations that you are an accredited and sophisticated investor and know that this is a high risk investment. The Members' Agreement includes limits on transferability subject to (1) a right of first refusal, (2) a right, but not obligation of the other members to purchase a deceased member's membership interest and (3) certain purchase rights relating to employees of the LLC (which I assume you will not be). All of this seems within the range of normal (there are a couple of typo's that they might want to clean up).
- Although the two agreements don't seem controversial, Brian has not included an Operating Agreement which you may know is essentially the LLC version of a partnership agreement for a partnership or articles of incorporation for a corporation. The Subscription Agreement refers to the Operating Agreement and has you represent that you have read and are familiar with it. The representation also refers to a "Membership Agreement" which I assume is a slight typo and meant to refer to the "Members'" Agreement that Brian sent, but we might want to confirm that.
- We should ask for and review the Operating Agreement. The Operating Agreement is where you would be able to determine your actual ownership interest, how profits/losses are allocated, whether there is any obligation for members to contribute additional capital, how the LLC is to be managed (e.g. how are decisions to be made? Whether members have veto rights over certain matters), the extent to which additional membership interests can be offered to others, whether and when distributions would be made to pay taxes or otherwise, among other things.
- You should probably also want to see any existing financial statements and to the extent they have made or are looking at particularly investments, information on those matters. Will they need additional infusions of equity to implement their business plan? If so, what are current expectations about how that would be done.
- You should also confirm that you would be investing on the same terms and at the same valuation as Peter and Brian. I note that the Subscription Agreement has you acknowledging that they have established a $10,000,000 valuation for the Company and that would be the basis for your investment. Have they each put in $5,000,000?
- You would probably also want to know whether they are offering interests to anyone else.

Let me know if you want to discuss.

Mike

**From:** Lee, Tom [mailto:Tom.Lee@molex.com]
**Sent:** Wednesday, November 29, 2006 8:55 AM
**To:** Froy, Michael M.
**Subject:** FW: Urchin Subscription Documents

can you call me or forward to someone I can discuss this with. this is a personal investment.

---

**From:** Brian Dennen [mailto:brian@urchinpartners.com]
**Sent:** Tuesday, November 28, 2006 5:31 PM
**To:** Lee, Tom
**Subject:** Urchin Subscription Documents

Tom,

Peter asked that I provide you with the subscription agreements for Urchin Capital Partners.

Please let me know if you have any questions.

Thanks,

Brian Dennen

**Urchin Capital Partners, LLC**
655 Montgomery St., Suite 900
San Francisco, CA 94111
O: 415-869-3752
F: 415-262-3878
IM: bdennen7467
brian@UrchinPartners.com
www.urchinpartners.com

*This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.*

CONFIDENTIALITY NOTICE: This message (including any attachments) may contain Molex confidential information, protected by law. If this message is confidential, forwarding it to individuals, other than those with a need to know, without the permission of the sender, is prohibited.

This message is also intended for a specific individual. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message or taking of any action based upon it, is strictly prohibited.

Chinese Japanese

www.molex.com/confidentiality.html
------------------------------------------------------------------------
CONFIDENTIALITY NOTE:
This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If

you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

IRS CIRCULAR 230 DISCLOSURE:
Any Federal tax advice contained herein is not written to be used for, and the recipient and any subsequent reader cannot use such advice for, the purpose of avoiding any penalties asserted under the Internal Revenue Code. If the foregoing contains Federal tax advice and is distributed to a person other than the addressee, each additional and subsequent reader hereof is notified that such advice should be considered to have been written to support the promotion or marketing of the transaction or matter addressed herein. In that event, each such reader should seek advice from an independent tax advisor with respect to the transaction or matter addressed herein based on the reader's particular circumstances.
-----------------------------------------------------------------------

# EXHIBIT E

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| **From:** | tslee234@gmail.com |
|---|---|
| **Sent:** | Friday, June 30, 2023 6:34 AM |
| **To:** | Miriam Manning |
| **Subject:** | FW: Urchin Subscription Documents |
| **Attachments:** | Urchin Capital Partners Subscription Agreement.pdf; Urchin Capital Partners Members' Agreement.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Here is the Urchin Subscription Agreements

---

**From:** Brian Dennen <brian@urchinpartners.com>
**Sent:** Tuesday, November 28, 2006 5:31 PM
**To:** Lee, Tom
**Subject:** Urchin Subscription Documents

Tom,

Peter asked that I provide you with the subscription agreements for Urchin Capital Partners.

Please let me know if you have any questions.

Thanks,

Brian Dennen

**Urchin Capital Partners, LLC**
655 Montgomery St., Suite 900
San Francisco, CA 94111
O: 415-869-3752
F: 415-262-3878
IM: bdennen7467
brian@UrchinPartners.com
www.urchinpartners.com

*This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.*

# MEMBERS' AGREEMENT

This Members' Agreement ("Agreement") is executed on May 15, 2006 by and among Peter Fader, Brian Dennen (the "Members") and Urchin Capital Partners LLC, a Delaware limited liability company (the "Company"). This Agreement shall be binding automatically on all assignees of the Company's membership interests, including but not limited to purchasers, transferees, donees, estates in bankruptcy, and the estates and heirs of deceased Shareholders.

## RECITALS

WHEREAS, the Members together own all of the issued and outstanding membership interests in the Company;

WHEREAS, the Members and the Company wish to execute this Agreement with respect to all membership interests of the Company now or hereafter outstanding, for the purposes of protecting the Company and the Members, as well as providing continuity for the Company's business in the event of the occurrence of certain events;

NOW, THEREFORE, the parties hereto agree as follows:

## ARTICLE I
## RESTRICTIONS ON TRANSFER

1.1 <u>Restrictions on Transfer</u>. None of the shares presently owned or subsequently acquired by the Members shall be sold, pledged, encumbered, transferred, or disposed of in any way, whether voluntarily, involuntarily, or by operation of law, except as shall be permitted under the terms of this Agreement.

1.2 <u>Certificate Legend</u>. On execution of this Agreement, each Member shall have placed on the certificates representing his membership interests the following legend:

> THESE MEMBERSHIP INTERESTS ARE SUBJECT TO A MEMBERS' AGREEMENT RESTRICTING TRANSFER OF MEMBERSHIP INTERESTS. ANY TRANSFER OF MEMBERSHIP INTERESTS IN VIOLATION OF SUCH AGREEMENT IS NULL AND VOID. SUCH AGREEMENT IS AUTOMATICALLY BINDING UPON ANY PERSON WHO ACQUIRES MEMBERSHIP INTERESTS. A COPY OF SUCH AGREEMENT IS AVAILABLE FOR INSPECTION AT THE OFFICES OF THE COMPANY.

1.3 <u>Right of First Refusal</u>.

(a)  Except as provided in Section 1.3(d), no Member shall sell, transfer, pledge, encumber, hypothecate or in any way dispose of any of his or her membership interests or any right or interest in them without obtaining prior written consent of the Company and of all other Members, unless the Member shall first have given written notice ("Offer Notice") to the Company of his or her intention to do so.  The notice shall be accompanied by an executed counterpart of any document of transfer, which must include the name and address of the proposed transferee and specify the membership interest to be transferred, the price, and the terms of payment.  For thirty (30) days following notice to the Company, it shall have the option, but not the obligation, to purchase all or any part of the membership interest at the price (or prorated price if less than all the membership interest) and on the terms stated in the notice and any accompanying transfer document(s).  If the Company exercises the option within the thirty (30) day period, the managing member of the Company shall give written notice of that fact to the offering Member.  The Company shall pay the purchase price in the manner provided in the terms of sale to the proposed transferee set forth in the transfer document(s) accompanying the notice.

(b)  If the option is not exercised by the Company on all of the membership interest set forth in the notice of intention to transfer within the thirty (30) day period, notice of the proposed transfer in the same form as the notice given to the Company shall be given immediately to the remaining Members, who shall have the option, but not the obligation, to purchase the remaining membership interest not purchased by the Company at the price and on the same terms and conditions specified in the notice and any accompanying transfer document(s).  Within twenty (20) days after giving the notice, any Member desiring to acquire any part or all of the membership interest offered shall deliver to the managing member of the Company a written election to purchase all or a portion of the membership interest then available.  If the total offers to purchase exceeds the membership interest available, each Member shall have priority, up to the amount of the membership interest specified in his or her notice of election to purchase, in the same proportion that the amount of the Company's membership interest, that he or she holds, bears to the total amount of the membership interests held by all Members electing to purchase.  The membership interests not purchased on such a priority basis shall be allocated in one or more successive allocations to those Members electing to purchase more than the amount of membership interests to which they have a priority right, up to the amount of membership interests specified in their respective notices, in the proportion that the number of membership interests held by

2

each of them bears to the amount of membership interests held by all of them. Within ten (10) days after the mailing of the notice to the Members, the managing member of the Company shall notify each Member of the amount of membership interests as to which his or her election was effective, and the Member shall meet the terms and conditions of the purchase within ten (10) days thereafter.

(c) If the Company and the remaining Members do not purchase all of the membership interests set forth in the notice of intention to transfer, all the membership interests may be transferred to the proposed transferee on the terms specified in the notice, at any time within sixty (60) days after expiration of the Members' option. The transferee will hold the membership interests subject to the provisions of this Agreement. No transfer of the membership interests shall be made after the end of the sixty (60) day period, nor shall any change in the terms of transfer be permitted without a new notice of intention to transfer and compliance with the requirements of this Section 1.3.

(d) Notwithstanding any provision in this Agreement to the contrary, any Member may transfer the membership interests subject to this Agreement to any trust established for the benefit of the Member. Any permitted transfer to a trust shall be subject to all of the provisions of this Agreement.

1.4 <u>Obligations of Transferees</u>. Any transferee of membership interests of the Company, or any interest in such membership interests, shall hold the shares or interest in the shares subject to all provisions of this Agreement and shall make no further transfers except as provided in this Agreement. Transfer of the membership interests shall not be entered on the books of the Company until an amended copy of this Agreement has been executed by the prospective transferee. Failure or refusal to sign such an amended copy of this Agreement shall not relieve any transferee from any obligations under this Agreement.

1.5 <u>Application of Agreement to All Membership interests</u>. The terms of this Agreement shall apply to all membership interests of capital stock of the Company in existence at the time this Agreement is executed, to any membership interests transferred in any manner by a Member, and to any additional membership interests that the Company may issue as a recapitalization, reorganization, dividend, split, or reverse split. The Company may require that a transferee, as a condition for transfer, execute an agreement similar to this Agreement. Any new membership interests issued by the Company shall be subject to the legend conditions set forth in Section 1.2.

3

1.6  <u>Effect of Purported Transfer</u>.  Any transfer or acquisition of membership interests in violation of this Agreement shall be null and void.  Each Member agrees that any such transfer or acquisition may and should be enjoined.

1.7  <u>Beneficial Ownership</u>.  Any purported transfer in violation of this Agreement will not affect the beneficial ownership of membership interests.  Thus, the Member making the purported transfer will retain the right to vote and the right to receive distributions and liquidation proceeds.


ARTICLE  II
<u>PURCHASE AND SALE</u>

2.1  <u>Purchase on Death</u>.

(a)  Upon the death of any Member (the "Deceased Member"), the Deceased Member's executor shall notify the other Members (the "Surviving Members") of such death, and the deceased Member's estate shall sell and the Surviving Members may purchase all the decedent's membership interests in the Company at a price equal to the fair market value of such shares, treating the Company as a going concern as of the date of death and on the terms elsewhere provided in this Agreement. The fair market value shall be determined by the independent public accountants for the Company. Should the Member's personal representative not agree to the determination of such accountants, he or she may appoint at his or her cost, another independent public accountant and the two shall jointly determine the fair market value. If the two such accountants cannot agree, they shall appoint a third independent public accountant and the determination of the third such accountant shall be final. As part of his or her determination, the third public accountant shall allocate the fees of all three accountants among the parties.  The rights of the Surviving Members to purchase shall be several and not joint and shall be in proportion to their respective membership holdings in the Company at the date of death of the Deceased Member.

(b)  If the Surviving Members do not purchase all of the membership interests of the Deceased Member pursuant to Section 2.1(a), the Company shall purchase the membership interests not purchased by the Surviving Members for the purchase price specified is Section 2.1(a) and on the terms elsewhere provided in this Agreement.

4

2.2 <u>Purchase on Termination of Employment Due to Discharge Without Cause or Disability</u>.

(a)  If any Member who is an employee of the Company shall cease being employed by the Company (i) due to being discharged without cause (as defined below); or (ii) by reason of his/her total physical or mental disability for a period of 180 consecutive days, all membership interests owned by such Member shall be subject to repurchase, at the election of the Company, at a price equal to the fair market value of such shares, treating the Company as a going concern as of the date of the event requiring the valuation of the membership interest and on the terms elsewhere provided in this Agreement. The fair market value shall be determined by the independent public accountants for the Company. Should the Member not agree to the determination of such accountants, he or she may appoint at his or her cost, another independent public accountant and the two shall jointly determine the fair market value. If the two such accountants cannot agree, they shall appoint a third independent public accountant and the determination of the third such accountant shall be final. As part of his or her determination, the third public accountant shall allocate the fees of all three accountants among the parties.

(b)  For purposes of this Agreement, "disability" shall mean a Member's inability to perform at least thirty (30) hours of productive service on behalf of the Company per week.

2.3 <u>Purchase on Voluntary Termination by Member or Termination for Cause</u>.

(a)  In the event that any Member's employment is terminated by reason of (i) his or her voluntarily quitting employment; or (ii) his or her being discharged for cause (as defined below), all membership interests owned by him or her shall be subject to repurchase, at the election of the Company, at a price equal to the greater of the purchase price paid for the membership interest or the net book value of the membership interest, as reflected in the Company's most recent balance sheet.

(b) Discharge for "cause," as used herein, shall mean discharge by the Company by reason of the fact that the member has been convicted of any felony or has been discharged from employment for theft, dishonesty, misconduct, for acts which cause embarrassment to or detrimental publicity of the Company, habitual neglect of his or her duties, or willful breach of duty or gross negligence in carrying out the activities for which the member is employed, or any other act or omission on his or her part which causes the National

5

Association of Securities Dealers, Inc. or the Securities and Exchange Commission to revoke the Member's securities license.

2.4 <u>Payment for and Transfer of Membership Interests</u>.

(a) On the occurrence of any event that leads to the purchase of membership interests under this Agreement, (i) the purchase price for the membership interests shall be paid to the transferring Member or to his or her estate, as the case may be, within the time period specified in the Section under this Agreement giving rise to the obligation to purchase, and (ii) the transferring Member or his or her estate, as the case may be, shall execute and deliver to the Company or the purchasing Member(s) the membership interest certificates representing such membership interests assigned in favor of the Company or the purchasing Member, at such time that the Company or purchasing Member shall pay the cash portion of the purchase price.

(b) If the event that leads to the purchase is the death of a Member governed by Section 2.1, the following provisions shall apply:

(i) The decedent's personal representative shall apply for and obtain any necessary court approval or confirmation of the sale of the decedent's membership interests under this Agreement.

(ii) The purchase price for the membership interests shall be delivered within one hundred twenty (120) days of the date of the notice given by the deceased Member's executor pursuant to Section 2.1. The purchaser or purchasers shall pay 50% of the purchase price in cash and shall pay the balance of the purchase price pursuant to a promissory note which satisfies the requirements of Section 2.4(d) and shall be due and payable in full four (4) years from the date of death.

(c) If the event that leads to the purchase is governed by Sections 2.2 or 2.3, the purchaser or purchasers shall pay twenty-five percent (25%) of the purchase price in cash within one hundred twenty (120) days of the event giving rise to the purchase of the membership interest and shall pay the remaining purchase price pursuant to a promissory note which satisfies the requirements of Section 2.6(d) and shall be due and payable in full as follows:

| Event Giving Rise to Purchase | Due Date and Term of Note |
|---|---|
| Disability | four (4) years from the |

6

| Event Giving<br>Rise to Purchase | Due Date and Term of Note |
|---|---|
| | date of total disability |
| Termination of employment by the Company without cause | five (5) years from the date of termination |
| Termination of employment by Member or the Company | seven (7) years from date of termination |

(d) The portion of the purchase price for membership interests purchased under this Agreement that is deferred shall be represented by a promissory note executed by all of the purchasing parties. The note shall bear interest at the prime rate or equivalent charged by the Bank of America plus two percent (2%). The note shall provide for equal quarter-annual payments which fully amortize principal and interest due thereunder over the term of the note. The note shall provide for prepayment of all or any part of the principal at any time without penalty or bonus. Any prepaid sums shall be applied against the installments thereafter falling due in inverse order of their maturity, or against all the remaining installments equally, at the option of the payers. The note shall provide that, if a default occurs, at the election of the holder the entire sum of principal and interest will immediately be due and payable and that the makers shall pay reasonable attorney fees to the holder if suit is commenced because of default. The note shall be secured by a pledge of all the membership interests being purchased in the transaction to which the note relates. The pledge agreement shall contain such other terms and provisions as may be customary and reasonable. As long as no default occurs in payments on the note, the purchasers shall be entitled to vote the membership interests and to receive all dividends thereon. The purchasers shall expressly waive demand, notice of default, and notice of sale, and they shall consent to public or private sale of the membership interests in a default, in mass or in lots at the option of the pledgeholder, and the seller shall have the right to purchase at the sale.

ARTICLE III
MISCELLANEOUS

3.1 Termination. This Agreement shall terminate upon the first to occur of:

(a) the written agreement of all parties; (b) the dissolution, bankruptcy, or insolvency of the Company; or

(c) at such time as only one Member remains.

7

3.2 <u>Notices</u>. All notices provided for in this Agreement shall be effective when they are served, either by personal delivery or deposited, postage pre-paid by registered or certified mail to the receiving party as follows:

> If to the Company:
>
> Urchin Capital Partners LLC
> 655 Montgomery Street, Suite 900
> San Francisco, CA 94111
> Attention: Peter Fader, managing member
>
> If to any Member: at the address set forth in the Company's records,

or such other address as any party shall hereafter designate in writing to the Company.

3.3 <u>Amendments and Modifications</u>. This Agreement cannot be amended or modified except in writing signed by all the parties hereto, or by their respective successors in interest.

3.4 <u>Headings</u>. The article and paragraph headings contained herein are for convenience of reference only and are not intended to define, limit or describe the scope or intent of any provision of this Agreement.

3.5 <u>Governing Law</u>. This Agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the State of California.

3.6 <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

3.7 <u>Partial Invalidity</u>. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid or unenforceable, the remainder of this Agreement, or the application of such provision to other persons or circumstances, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

3.8 <u>Attorneys' Fees</u>. In the event that a legal proceeding is filed to enforce the terms hereof, to declare rights hereunder or to resolve any controversy, claim or dispute regarding the terms or provisions of this Agreement, the prevailing party shall be entitled to recover its costs of

8

suit and reasonable attorneys' fees as may be fixed by the court.

3.9    Binding Effect; Successors and Assigns.  Except as herein otherwise specifically provided, this Agreement shall run with the land, with respect to both the benefits and burdens created herein, and shall be binding upon and inure to the benefit of the parties and their legal representatives, successors and assigns.

3.10    No Waiver.  No waiver by a party of any breach of this Agreement shall be deemed to be a waiver by any other party or of any other breach of any kind or nature, and no acceptance of performance by a party after any such breach shall be deemed to be a waiver by any other party or of any breach of this Agreement, whether or not such party knows of such breach at the time it accepts such performance.  No failure or delay on the part of the parties to exercise any rights they may have hereunder shall prevent the exercise thereof at any time.

3.11    Exclusive Agreement; Interpretation.  The terms of this Agreement are intended by the parties as the final expression of their agreement with respect to such terms as are included in this Agreement and may not be contradicted by evidence of any prior to contemporaneous agreement.  The language in all parts of this Agreement will in all cases be construed as a whole and in accordance with its fair meaning and not restricted for or against any party.

3.12    Further Assurances.  The parties agree that any time or from time to time they will execute and deliver such further documents and undertake such other actions as the other party may reasonably request in order to effect fully the purposes of this Agreement.

3.13    Arbitration and Attorneys' Fees.  Any dispute or controversy arising under, out of, or in connection with this Agreement shall be resolved by binding arbitration conducted in San Francisco, California in accordance with the rules of the American Arbitration Association before one (1) arbitrator.  In any arbitration or court proceeding to enforce any arbitration award made pursuant to this Section, the prevailing party shall be entitled to recover from the other party its or his/her attorneys' fees and costs.

Case: 08-30119   Doc# 184-1   Filed: 09/25/23   Entered: 09/25/23 11:33:48   Page 29 of 39

IN WITNESS WHEREOF, this Agreement was executed as of the date first above written.


Urchin Capital Partners LLC


_____
By: Peter Fader
    Managing Member


_____
Peter Fader


_____
Brian Dennen


10

COUNTERPART TO MEMBERS' AGREEMENT


        IN WITNESS WHEREOF, the undersigned, being a
Member of the Company, has caused this counterpart to the
Members' Agreement to be duly executed as of
_____.

        MEMBER


_____
Signature of Member


_____
Print Name


11

Subscription Agreement

To: Urchin Capital Partners LLC

1. Subscription.

1.1. The undersigned hereby applies to become a member in Urchin Capital Partners LLC, a Delaware limited liability company ("Issuer") and to purchase the membership interests (the "Interests") indicated below in accordance with the terms and conditions of this Subscription Agreement.

1.2. Before this subscription for Interests is considered, the undersigned must complete, execute, and deliver to Issuer the following:

a. The purchaser's personal check or other form of acceptable payment in the amount of $_____.

b. A completed and signed Subscription Agreement.

c. If applicable, the Purchaser Representative Questionnaire in the form required by the Issuer.

1.3. The undersigned understands that the cash received by Issuer from each subscriber will be deposited in the Issuer's account and all interest earned will accrue to the benefit of the Issuer.

1.4. This Subscription is irrevocable. It may be rejected in whole or in part by the Issuer in its sole discretion. In the event that this Subscription is rejected by the Issuer, all funds and documents tendered by the undersigned shall be returned, together with any interest earned by the Issuer as allocated by the Issuer.

1.5. This Subscription is not transferable or assignable by the undersigned.

1.6. This Subscription, on acceptance by the Issuer, shall be binding on the heirs, executors, administrators, successors, and assigns of the undersigned.

1.7. If the undersigned is more than one person, the obligations of the undersigned shall be joint and several and the representations and warranties shall be deemed to be made by and be binding on each such person and his heirs, executors,

1

administrators, successors, and assigns.

2. **Acknowledgments.** The undersigned understands and acknowledges that:

2.1. There are substantial risks incident to the ownership of Interests of the Issuer, and such investment is speculative and involves a high degree of risk of loss by the undersigned of the undersigned's entire investment in the Issuer;

2.2. The undersigned has been advised to consult the undersigned's own attorney concerning the Issuer;

2.3. The undersigned is familiar with the business operations of the Issuer, due in part to the undersigned's current employment by the Issuer;

2.4. The offering has not been registered under the Securities Act of 1933, as amended (the "Act"), or any applicable state securities laws in reliance on the exemptive provisions of the Act and such other laws;

2.5. No federal or state agency has passed on the Interests offered or made any finding or determination concerning the fairness of this investment and no such agency has recommended or endorsed the Interests;

2.6. Because the Interests have not been registered under the Act or qualified under any state law, a purchaser of Interests must bear the economic risk of investment for an indefinite period of time because the Interests will bear a restrictive legend and may not be sold, pledged, or otherwise transferred in the absence of an effective registration or qualification under federal and applicable state law or an opinion by counsel to the Issuer that such registration and qualification is not required;

2.7. The undersigned as Purchaser understands that the Issuer is under no obligation and has not undertaken to register or qualify the sale, transfer, or other disposition of Interests by it or on its behalf, to take any other action necessary in order to make compliance with an exemption from registration or qualification available, or to do so at any time in the future;

2.8. The undersigned as Purchaser will not make any sale, transfer, or other disposition of Interests except in compliance with the Act and its Rules and Regulations as well as any applicable state laws and regulations; and

2

2.9. The transferability of Interests is further restricted because no public market for these securities exists or is ever anticipated to exist and each Purchaser will be required to enter into a Membership Agreement requiring the sale of Interests to the Company under certain circumstances, including termination of employment with the Company.

3. Representations. The undersigned represents and warrants as follows:

3.1. The undersigned has read and is familiar with the Issuer's Operating Agreement and Membership Agreement;

3.2. The undersigned has carefully reviewed and understands the risks of, and other considerations relating to, a purchase of Interests;

3.3. The undersigned and his or her representatives, if any, have been furnished all materials relating to the Issuer and its activities and the offering of Interests that they have requested, and have been afforded the opportunity to obtain any additional information and ask all questions concerning the Issuer, Interests, and investment necessary to verify the accuracy of any representations or information and to understand any additional matters that the undersigned believes are necessary to evaluate the investment and its associated risks;

3.4. The Issuer has answered all inquiries that the Undersigned and his or her representatives, if any, have put to it concerning the Issuer and its activities, and all other matters relating to the Issuer and the offering and sale of the Interests;

3.5. The undersigned is at least twenty-one (21) years of age;

3.6. The undersigned has an individual net worth in excess of $1,000,000 or has individual income in excess of $200,000 in each of the two most recent years and reasonably expects an income in excess of $200,000 in the current year or joint income together with his or her spouse of $300,000 in each of those two years and an expected joint income of $300,000 in the current year. If a partnership, corporation or limited liability company each partner, shareholder or member as the case may be is within the above standard;

3.7. The undersigned has adequate means of providing for his or her current needs and personal contingencies, has no need for liquidity in his or her investment, and could afford to lose the

3

entire amount of his or her investment;

3.8. The undersigned is obtaining the Interests for his or her own account for investment purposes and not with a view or intention to resell or distribute the same, and has no present intention, agreement, or arrangement to divide his or her participation with others or to resell, assign, transfer, or otherwise dispose of all or any part of the Interests for which the undersigned has subscribed;

3.9. The undersigned has been advised that Interests must be held indefinitely unless (a) distribution of Interests is subsequently registered for resale under the Act, or (b) in the opinion of counsel acceptable to the Issuer, some other exemption from registration under the Act is available;

3.10. Either (circle the letter which reflects the correct statement):

a. The undersigned has such knowledge and experience in business and financial matters that the undersigned is capable of evaluating the Issuer, its business activities, and the risks and merits of investment in the Interests, of protecting the undersigned interests, and of making an informed investment decision. The undersigned has not consulted with others in connection with evaluating such risks and merits; or

b. The undersigned has been advised by others, listed below (who are unaffiliated with and who are not compensated by the Issuer or any of its affiliates or selling agents, directly or indirectly), and has such knowledge and experience in business and financial matters that the undersigned is capable of evaluating the Issuer and its proposed activities, the risks and merits of investment in the Interests and of making an informed investment decision, and the persons listed below are not purchaser representatives used in connection with evaluating such risks and merits:

(1) Name: _____

       Relationship (please specify):

(2) Name: _____

       Relationship (please specify):

c. The undersigned and the Purchaser Representatives listed below (who are unaffiliated with and who are not compensated by

4

the Issuer or any of its affiliates or selling agents, directly or indirectly) together have such knowledge and experience in business and financial matters that the undersigned and the purchaser representatives together are capable of evaluating the Issuer and its proposed activities, and the risks and merits of investment in the Interests and of making an informed investment decision.

Purchaser Representatives (each person listed must complete a Purchaser Representative Questionnaire in the form required by the Issuer, which must be acknowledged by the Subscriber):

(1) Name:_____

　　　Relationship (please specify):

(2) Name:_____

　　　Relationship (please specify):

3.11. The undersigned is not relying on the Issuer nor any of its officers or members for independent legal, accounting, financial, or tax advice in connection with the undersigned's evaluation of the risks and merits of investment in the Issuer and the consequences to the undersigned of such an investment; and

3.12. The undersigned is aware that the Company has established a valuation of $10,000,000 and that this valuation has not been established through any appraisal of the assets of the Company or other established method of calculating the value of the Company.

4. Indemnification. The undersigned agrees to indemnify the Issuer and hold the Issuer harmless from and against any and all liability, damage, cost, or expense incurred on account of or arising out of:

4.1. Any inaccuracy in the undersigned's representations and warranties set forth in this document or in any other declarations, representations, and warranties in other communications to the Issuer;

4.2. The disposition of any of the Interests that the undersigned will receive, contrary to the undersigned's foregoing declarations, representations, and warranties; and

5

4.3. Any action, suit, or proceeding based on (a) a claim that declarations, representations, or warranties were inaccurate or misleading or otherwise cause for obtaining damages or redress from the Issuer; or (b) the disposition of any of the Interests or any part of them.

5. Choice of Laws

This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware except as to the manner in which the Subscriber elects to take title to Interests of the Issuer, which shall be construed in accordance with the laws of the state of his or her principal residence.

6. Subscription for Interests.

Based upon a $10,000,000 valuation the undersigned subscribes for _____% of the Company Interests.

Investor Information: (The information below should be consistent with the form of ownership selected below.)

Name (please print): _____

If entity named above, by: _____

Social Security or Taxpayer I.D. Number:
 _____

Business Address (including zip code):
_____

Business Telephone Number: _____

Residence Address (including zip code):
_____

Residence Telephone Number: _____

Email Address: _____

All communications to be sent to:

Business Address ____   Residence Address ____ Email Address __

6

7. Title to Interests

Please indicate below the form in which you will hold title to your interest. PLEASE CONSIDER CAREFULLY. ONCE YOUR SUBSCRIPTION IS ACCEPTED, A CHANGE IN THE FORM OF TITLE CONSTITUTES A TRANSFER OF THE SECURITY AND RESULTS IN ADDITIONAL COSTS TO YOU. Subscribers should seek the advice of their attorneys in deciding in which of the forms they should take ownership of the Interests, because different forms of ownership can have varying gift tax, estate tax, income tax, and other consequences, depending on the state of the investor's domicile and his or her particular personal circumstances. For example, in community property states, if community property assets are used to purchase Interests held as separate property, adverse gift tax consequences may result.

____ INDIVIDUAL OWNERSHIP (one signature required)

____ JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON (both or all parties must sign)

____ COMMUNITY PROPERTY (one signature required if interest held in one name, i.e., managing spouse; two signatures required if interest held in both names)

____ TENANTS IN COMMON (both or all parties must sign)

____ GENERAL PARTNERSHIP (fill out all documents in the name of the PARTNERSHIP, by a PARTNER authorized to sign, and include a copy of the Partnership Agreement)

____ LIMITED PARTNERSHIP (fill out all documents in the name of the LIMITED PARTNERSHIP, by a GENERAL PARTNER authorized to sign, and include a copy of the Limited Partnership Agreement and any other document showing that the investment is authorized)

____ CORPORATION (fill out all documents in the name of the CORPORATION, by the President or other officer authorized to sign, and include a copy of the Corporation's Articles and certified Corporate Resolution authorizing the signature)

____ LIMITED LIABILITY COMPANY (fill out all documents in the name of the LIMITED LIABILITY COMPANY, by a manager authorized to sign, and include a copy of the Operating Agreement and any other documents showing that the investment is authorized)

____ TRUST (fill out all documents in the name of the TRUST, by the trustee, and include a copy of the instrument creating the

7

trust and any other documents necessary to show that the
investment by the trustee is authorized. The date of the trust
must appear on the Notarial where indicated.)

8. Securities Legends

8.1. The undersigned understands that the Interests have
been issued under an exemption from the registration provisions
of the Securities Act of 1933, as amended. The exemption relied
upon is set forth at Rule 506 of Regulation D promulgated under
the Securities Act of 1933, as amended. The Interests may not be
sold or transferred absent registration or an applicable
exemption.

Subject to acceptance by the Issuer, the undersigned has
completed this Subscription Agreement.


Date:                          _____
                               Subscriber

The Issuer has accepted this Subscription.


Date:                          Urchin Capital Partners LLC


                               By:_____
                                  Peter Fader, Managing
                                  Member

8

Case: 08-30119   Doc# 184-1   Filed: 09/25/23   Entered: 09/25/23 11:33:48   Page 39
of 39